Armin NANKIN, Trustee of the Gertrude H. Weiss Revocable Trust, Plaintiff-Appellant-Petitioner,

v.

VILLAGE OF SHOREWOOD, Defendant-Respondent.

Supreme Court

*No. 99–1058. Oral argument March 6, 2001.—Decided July 6, 2001.*

2001 WI 92

(Also reported in 630 N.W.2d 141.)

For the plaintiff-appellant-petitioner there were briefs by *Alan Marcuvitz, Robert L. Gordon* and *Weiss, Berzowski, Brady & Donahue, LLP*, Milwaukee, and oral argument by *Robert Gordon* and *Alan Marcuvitz*.

For the defendant-respondent there was a brief by *Raymond J. Pollen, Deborah S.R. Hoffmann* and *Crivello, Carlson, Mentkowski & Steeves, S.C.*, Milwaukee, and oral argument by *Raymond Pollen*.

An amicus curiae brief was filed by *Gregg C. Hagopian*, assistant city attorney, on behalf of the City Attorney for the City of Milwaukee, the Wisconsin Association of Assessing Officers, the South Eastern Wisconsin Association of Assessing Officers, and the Intergovernmental Cooperation Council of Milwaukee County, and oral argument by *Gregg Hagopian*.

¶ 1. WILLIAM A. BABLITCH, J. Armin Nankin (Nankin) seeks review of a court of appeals' decision that upheld the constitutionality of Wis. Stat. § 74.37(6) (1997–98).[1] This section operates to allow owners of property located in counties with a population of less than 500,000 to challenge a property assessment with a full trial in the circuit court; those with a population of 500,000 or more (populous counties) are not allowed a full trial "de novo" in the circuit court. Nankin contends that the statute is unconstitutional because it violates the constitutional guarantee of equal protection of the law, that is, it treats owners of property located in populous counties differently than owners of property located in other counties without a rational basis. We agree. We also conclude that § 74.37(6) is severable from the remainder of the statute. Accordingly, we reverse the determination made by the court of appeals and grant Nankin's motion for summary judgment.

## FACTS AND PROCEDURAL HISTORY

¶ 2. The facts are undisputed. Nankin is trustee of a trust that owns a parcel of real property in the Village of Shorewood (Village) in Milwaukee County. On May 9, 1998, Nankin filed a written objection to the village assessor's 1998 assessment of the property. On May 11, 1998, the Village of Shorewood Board of Review (Board) conducted a hearing on this objection. At the conclusion of the hearing, the Board voted to sustain the assessment of the village assessor.

¶ 3. Pursuant to statute, once a board of review renders its decision, appeal from the decision may be

---

[1] All subsequent references to the Wisconsin Statutes are to the 1997–98 version unless otherwise indicated.

accomplished in one of three ways.[2] First, an owner can appeal from the board's determination by an action for certiorari to the circuit court under Wis. Stat. § 70.47(13). Second, pursuant to Wis. Stat. § 70.85, a property owner may submit a written complaint with the department of revenue requesting that the department revalue the property. § 70.85(1), (4)(b). The department's decision may then be appealed through an action for certiorari in the county in which the property is located. § 70.85(4)(c). Third and finally, after paying the tax on the assessment, a property owner may proceed under Wis. Stat. § 74.37 with a claim for an excessive assessment against the taxation district[3] or the county, depending on which entity collected the tax. § 74.37(1), (2)(a), (4)(b). Such claims seek "to recover that amount of general property tax imposed because the assessment of property was excessive." § 74.37(1). If this claim is denied, the aggrieved property owner may then commence an action in the circuit court to recover the amount of the claim not allowed. § 74.37(3)(d).

¶ 4. Because of Wis. Stat. § 74.37(6), however, Nankin was prohibited from pursuing this final option. This subsection provides that § 74.37 "does not apply in counties with a population of 500,000 or more." In this case, because the trust property was located in the Village of Shorewood in Milwaukee County, a county that had a population of 500,000 or more, Nankin could not file a claim under § 74.37.

---

[2] *See Hermann v. Town of Delavan*, 215 Wis. 2d 370, 379–80, 572 N.W.2d 855 (1998).

[3] A "taxation district" is defined as "a town, village or city in which general property taxes are levied and collected." Wis. Stat. § 70.045.

¶ 5. On June 15, 1998, Nankin filed a declaratory judgment action in the circuit court, seeking a declaration that Wis. Stat. § 74.37(6) was unconstitutional. In particular, he alleged that this statute violated (1) Article I, Section 1 of the Wisconsin Constitution and the Fourteenth Amendment of the United States Constitution, both of which guarantee equal protection under the law; (2) Article IV, Section 31(6) of the Wisconsin Constitution, which prohibits the enactment of special or private laws regarding the assessment or collection of taxes; and (3) Article VIII, Section 1 of the Wisconsin Constitution, which mandates that the rule of taxation shall be uniform. Nankin also sought a declaration from the court that § 74.37(6) was severable from the remainder of the statute; a permanent injunction prohibiting the defendant from asserting § 74.37(6) as a defense to any claim filed by Nankin regarding the 1998 assessment of property; and costs incurred, including reasonable attorney fees.

¶ 6. With respect to his equal protection claim, Nankin argued that the statute was unconstitutional because it legislated disparate treatment for persons who own property in municipalities in counties with a population of 500,000 or more and persons who own property in municipalities in other counties. Persons owning property in populous counties, Nankin argued, could ultimately only receive certiorari review of their property assessments in the circuit court, either under Wis. Stat. § 70.47(13) or Wis. Stat. § 70.85(4)(c). In contrast, persons owning property in other counties could receive de novo review in the circuit court by pursuing an action under Wis. Stat. § 74.37(3)(d). Nankin contended that there was no rational basis for this disparate treatment of property owners in assessment

appeal options based solely on the population of the county in which the property is situated.

¶ 7. Nankin filed a motion for summary judgment. This motion included a claim that Wis. Stat. § 74.37(6) also violated Article IV, Section 18 of the Wisconsin Constitution. This constitutional provision limits the legislature from passing laws that have only limited application.

¶ 8. The Milwaukee County Circuit Court, the Honorable Diane S. Sykes, denied Nankin's motion and his request for declaratory relief, concluding that he failed to carry his burden of proving the statute unconstitutional beyond a reasonable doubt. With respect to Nankin's equal protection claim, the court determined that this question had been resolved in *S.C. Johnson & Son, Inc. v. Town of Caledonia*, 206 Wis. 2d 292, 557 N.W.2d 412 (Ct. App. 1996). The court followed this precedent and opined that it was reasonable for the legislature to exempt populous counties from this type of review based on the conclusion that de novo review of municipal board of review decisions in the circuit court would be unworkable in such counties. Certiorari review, the court noted, still provided a meaningful opportunity for judicial correction of municipal tax assessment errors, even though this review was far narrower than de novo review. The court also rejected Nankin's other constitutional claims and denied costs to Nankin.

¶ 9. The court of appeals, in a per curiam decision, affirmed the circuit court's decision. We accepted review to determine whether Wis. Stat. § 74.37(6) violated one or more of the following state constitutional provisions: (1) Article I, Section 1; (2) Article IV, Sec-

tion 31(6); or (3) Article IV, Section 18.[4] Because we conclude that this statutory section violates Article I, Section 1, we will not review Nankin's other arguments. Our analysis also reveals that § 74.37(6) may be severed from the remainder of the statute.

## STANDARD OF REVIEW

¶ 10. A challenge to the constitutionality of a statute presents a question of law that we review under a de novo standard of review. *Aicher v. Wis. Patients Comp. Fund,* 2000 WI 98, ¶ 18, 237 Wis. 2d 99, 613 N.W.2d 849. We presume that the statute is constitutional and indulge "every presumption to sustain the law if at all possible. . . ." *Id.* The burden is on the party challenging the statute to prove that the statute is unconstitutional beyond a reasonable doubt. *Id.* at ¶ 19. Any doubt must be resolved in favor of the constitutionality of the statute. *Id.* at ¶ 18.

## EQUAL PROTECTION

¶ 11. Nankin challenges the constitutionality of Wis. Stat. § 74.37(6) on equal protection grounds.[5] To

---

[4] Nankin did not pursue his Article VIII, Section 1 claim on appeal.

[5] Equal protection is guaranteed under Article I, Section 1 of the Wisconsin Constitution, which states: "All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed." "This court applies the same interpretation to the state Equal Protection Clause as that given to the equivalent federal provision." *Tomczak v. Bailey,* 218 Wis. 2d 245, 261, 578 N.W.2d 166 (1998).

prevail, he must show that the statute unconstitution-ally treats members of similarly situated classes differently. *Aicher*, 2000 WI 98 at ¶ 56. In cases, like here, where the statutory classification does not involve a suspect class or a fundamental interest, we will sustain the classification if there exists any rational basis to support it. *Milwaukee Brewers v. DHSS*, 130 Wis. 2d 79, 98, 387 N.W.2d 254 (1986). A statute violates equal protection only when "the legis-lature has made an irrational or arbitrary classification, one that has no reasonable purpose or relationship to the facts or a proper state policy." *Id.* at 99. Any doubts must be resolved in favor of the reason-ableness of the classification. *State v. Hezzie R.*, 219 Wis. 2d 848, 894, 580 N.W.2d 660 (1998).

¶ 12. " 'The fact [that] a statutory classification results in some inequity. . .does not provide sufficient grounds for invalidating a legislative enactment.' " *Id.* at 893–94 (quoting *State v. McManus*, 152 Wis. 2d 113, 131, 447 N.W.2d 654 (1989)). Indeed, " '[e]qual protec-tion does not deny a state the power to treat persons within its jurisdiction differently. . . .' " *Id.* at 893 (quot-ing *McManus*, 152 Wis. 2d at 131). However, "[t]he basic test is not whether some inequality results from the classification but whether there exists a rational basis to justify the inequality of the classification." *Mil-waukee Brewers*, 130 Wis. 2d at 99. In determining whether a rational basis exists, we look first to deter-mine whether the legislature articulated a rationale for its determination. *See id.* at 99–101. If we cannot identify any such articulated rationale, it is the court's obligation to construct one. *Id.* at 101.

¶ 13. We conclude that Nankin has met his burden in proving beyond a reasonable doubt that Wis. Stat. § 74.37(6) violates equal protection. We reach this conclusion based on three separate determinations. The first determination is that, in enacting § 74.37(6), the legislature created a distinct classification of citizens, that is, owners of property located in counties with a population of 500,000 people or more. The parties do not dispute that the statute created this classification.

¶ 14. Our second determination is that the legislation treats this class significantly different from all others similarly situated. In particular, as Nankin asserts, the statute treats the class differently by prohibiting it from filing a circuit court action under Wis. Stat. § 74.37(3)(d) to challenge the excessiveness of their property assessment. All other owners of property located in counties with a population of less than 500,000 are entitled to proceed under this statute. The inequality results from advantages stemming from circuit court actions under § 74.37(3)(d), which are not available to the disfavored class. We provide analysis on our conclusion below.

¶ 15. Our final determination is that Nankin has met his burden in proving beyond a reasonable doubt that there is no rational basis for the classification under Wis. Stat. § 74.37(6). The legislature did not articulate any rationale for the classification, and we are unable to construct a rationale for this classification. There is no rational basis for the legislature to treat owners of property located in municipalities in different counties dissimilarly in challenging their property tax assessments based solely on the population of the county in which the property is situated.

99

Again, our analysis below shows how we reach this determination.

¶ 16. We begin with some background on property tax administration for general property in Wisconsin. On the whole, municipalities form the primary units of property tax administration in Wisconsin. In particular, the statutes designate any town, city, or village in which general property taxes are levied and collected as taxation districts. Wis. Stat. § 70.045. Each taxation district is required to have an assessor, and this assessor may be appointed or elected. Wis. Stat. § 70.05(1).[6] In the alternative and under certain conditions, counties may adopt and implement a county assessor system. Wis. Stat. § 70.99(1).

¶ 17. The assessment of general property in each town, city, and village is made according to Wis. Stat. Ch. 70. Wis. Stat. § 70.05(1). It is the assessor's duty to discover, list, and value all taxable real and personal property within the taxation district and annually report such information in an assessment roll for the district. Wis. Stat. §§ 70.10, 70.29, 70.32(1)–(2). If a property owner disagrees with an assessment, the owner may file a formal objection with the municipality's board of review. Wis. Stat. § 70.47(7)(a).[7]

¶ 18. The board of review, however, "is not an assessing body but rather a *quasi*-judicial body whose duty it is to hear evidence tending to show errors in the

---

[6] First class cities have special provisions for their assessors. Wis. Stat. § 70.06. Classes of cities are defined by statute. *See* Wis. Stat. § 62.05.

[7] In first class cities and certain second class cities, a board of assessors will hear complaints before objections are brought before a board of review. *See* Wis. Stat. §§ 70.07, 70.075, 70.47(16).

assessment roll and to decide upon the evidence adduced whether the assessor's valuation is correct." *State ex rel. I.B.M. Corp. v. Bd. of Review of Fond du Lac*, 231 Wis. 303, 306, 285 N.W. 784 (1939). The board must presume that the assessor's valuation is correct, and this presumption may be rebutted only by sufficient showing upon sworn oral testimony by the objector that the valuation is incorrect. Wis. Stat. § 70.47(8)(i). If the board determines that the assessment is too high or too low, it must raise or lower the assessment accordingly. § 70.47(6), (9)(a).

¶ 19. After the board renders its decision, the property owner may pursue one of the three appeal options discussed above. Our analysis focuses on the differences between the certiorari review available under Wis. Stat. §§ 70.47(13) and 70.85(4)(c) and a circuit court action permitted under Wis. Stat. § 74.37(3)(d). A close analysis reveals that a property owner who is able to pursue a circuit court action is placed at a significant advantage when compared to other property owners.

¶ 20. Certiorari review under Wis. Stat. § 70.47(13)[8] is limited to a review of the record made before the board of review. *State ex rel. Hemker v. Huggett*, 114 Wis. 2d 320, 323, 338 N.W.2d 335 (Ct. App.

[8] Our discussion of certiorari review of the board of review's decision applies equally for certiorari review of the department of revenue's decision. Wisconsin Stat. § 70.85(4)(c) does not expand on the grounds for certiorari review. Therefore, it is appropriately defined, similar to Wis. Stat. § 70.47(13) review, under common law certiorari. *See Hanlon v. Town of Milton*, 2000 WI 61, ¶ 23, 235 Wis. 2d 597, 612 N.W.2d 44; *State ex rel. Wis. River Power Co. v. Bd. of Review of Armenia*, 125 Wis. 2d 94, 97, 370 N.W.2d 580 (Ct. App. 1985).

1983). Thus, the court may not conduct its own factual inquiry and may not admit any new evidence. *Id.* On review, the court only considers the following factors:

(1) whether the board acted within its jurisdiction;
(2) whether the board acted according to law;
(3) whether the board's action was arbitrary, oppressive or unreasonable, representing its will rather than its judgment; and (4) whether the evidence was such that the board might reasonably make the order or determination in question.

*Waste Mgmt., Inc. v. Kenosha County Bd. of Review,* 184 Wis. 2d 541, 554, 516 N.W.2d 695 (1994).

¶ 21. An assessment that was made in accordance with the statutory mandate must be upheld if it can be supported by any reasonable view of the evidence. *Id.* The court will not make an assessment of the property; instead, if it finds any error that renders the assessment void, the court must set aside the assessment and remand to the board for further proceedings. *Id.* at 566; *State ex rel. Garton Toy Co. v. Town of Mosel,* 32 Wis. 2d 253, 258, 145 N.W.2d 129 (1966); Wis. Stat. § 70.47(13).

¶ 22. We compare this review to a circuit court action permitted under Wis. Stat. § 74.37(3)(d). Again, pursuant to this section, after a claim in the taxation district or county is disallowed, a property owner may file an action in the circuit court to recover any amount of property tax imposed as a result of an excessive assessment. § 74.37(1), (2), (3)(d). This action proceeds according to state civil procedure and practice. *See* Wis. Stat. § 801.01(1), (2).

¶ 23. The Village argues that *S.C. Johnson,* 206 Wis. 2d 292, already concluded that the differences

between certiorari review and a court action under Wis. Stat. § 74.37(3)(d) do not result in significantly different treatment between owners of property located in populous counties and other property owners in the state. In *S.C. Johnson*, an owner of property located in Racine County filed a claim and action under § 74.37. *Id.* at 296. After concluding that the owner could pursue this action, the court examined whether prohibiting this right in populous counties violated equal protection. *Id.* at 306–08. The court addressed this argument even though it concluded that the party raising the argument, a municipality, had no standing to challenge the constitutionality of the statute. *Id.* at 302–04, 306–08. The court concluded that, despite the anomalies that existed between certiorari review and a § 74.37(3)(d) action, the legislative distinction was insufficient to violate equal protection. *Id.* at 308. In reaching its determination, the court noted that the distinction merely dealt with "the *method* by which the right of judicial review is pursued," rather than whether judicial review was provided at all, which the court suggested may have raised some equal protection concerns. *Id.*

¶ 24. We disagree with the characterization made by the court of appeals. The problem with this characterization is that an action under Wis. Stat. § 74.37(3)(d) is not simply another means of judicial review. Judicial review entails "[a] court's review of a lower court's or an administrative body's factual or legal findings." *Black's Law Dictionary* 852 (7th ed. 1999). That is not the case in an action under § 74.37(3)(d). Instead, this statute affords the claimant the right to pursue an action according to state civil

103

practice and procedure, including the right to a trial.[9] This difference is significant because, unlike certiorari review, § 74.37(3)(d) actions allow property owners to again fully contest their case in a court trial despite having contested it before the board of review.

¶ 25. The differences between such court actions and certiorari review are considerable. To begin with, as mentioned above, certiorari review is limited to a review of the record. In comparison, during a court action, if the action proceeds to trial, the court may make its determination without regard to any determination made at any earlier proceeding. Instead, new evidence may be introduced, and the court may examine this evidence in making its determination. In addition, unlike certiorari review, during a court trial, the court may make its determination without giving deference to any determination made at a previous proceeding. The court must only give presumptive weight to the assessor's assessment. Wis. Stat. § 70.49(2). Finally, unlike a certiorari review, in a trial, the court, upon making its determination, is not required to remand to the board for an assessment. It may make its determination based on the evidence. The court is only limited in the respect that, if a reassessment is necessary, the court must continue the action and

---

[9] In *S.C. Johnson & Son, Inc. v. Town of Caledonia*, 206 Wis. 2d 292, 301, 557 N.W.2d 412 (Ct. App. 1996), the court of appeals referred to a Wis. Stat. § 74.37(3)(d) action as a "trial de novo." This was incorrect. "A trial *de novo* is a new trial in which the whole case is retried as if no trial whatsoever had been had in the first instance." *Vill. of Menomonee Falls v. Michelson*, 104 Wis. 2d 137, 149, 311 N.W.2d 658 (Ct. App. 1981). Although assessments are contested at the board of review, such board hearings cannot be said to be the same as a court trial, which is permitted under to § 74.37.

order the reassessment before rendering its judgment. Wis. Stat. § 74.39(1). However, even if a reassessment is necessary, the court may still proceed to judgment if it is in the best interests of all parties to the action. § 74.39(3).

¶ 26. The legislative history of Wis. Stat. § 74.37 also supports the conclusion that the legislature intended an action for excessive assessment to provide a significantly different option for property owners than mere certiorari review in challenging their assessments. In 1953, the legislature created Wis. Stat. § 70.47(9a) (1953), which permitted certiorari review from the board of review decision, and Wis. Stat. § 74.73(4) (1953), which prohibited any claim or court action based upon an alleged excessive assessment and restricted appeal from the board of review to the manner prescribed under § 70.47(9a) (1953) and other statutes.[10] *See* §§ 1–2, ch. 435, Laws of 1953. A drafting request dated January 25, 1955, shows that Lieutenant Governor Warren Knowles wanted to revise ch. 435, Laws of 1953 to allow the circuit court to "take testimony and make finding of fact in assessment cases." Drafting Request, *microformed on* ch. 440, Laws of 1955 (Leg. Ref. Bureau). More specifically, he sought to amend certiorari review in the circuit court so that the court had "the authority to weigh evidence and make a final determination of the facts." *Id.* The request noted that, at that time, the court could only

---

[10] The other statutes included Wis. Stat. § 70.47(13) (1953), which, like the current § 70.47(16), provided for special objection procedures for residents of first class cities, and Wis. Stat. § 70.85 (1953), which, similar to the current § 70.85, permitted property owners to challenge the valuation of their assessment before the department of taxation. Section 70.85 (1953), however, did not provide for certiorari review in the circuit court.

remand to the board of review for a new assessment. *Id.*

¶ 27. In response to this request, however, the legislature did not broaden the scope of certiorari review in the circuit court. Instead, the legislature repealed and recreated Wis. Stat. § 74.73(4) (1953), to permit a circuit court action for any excessive assessment under § 74.73(4) (1955). *See* ch. 440, Laws of 1955. Wisconsin Stat. § 70.47(9a) (1953) was left intact and was later renumbered as § 70.47(13). *See* § 878, ch. 34, Laws of 1979. This request and subsequent action by the legislature shows that the legislation's intent was to provide property owners with a full court trial when challenging their assessment, which was significantly different than the existing certiorari review.

¶ 28. The Village argues that an equal protection violation is not present because the board of review provides adequate due process to property owners. We interpret this argument to allege that no disparate treatment exists because property owners are essentially afforded the same process at the board of review as they are in a circuit court action. Our primary focus, however, is in comparing the differences between certiorari review and a court trial. However, even when comparing the board of review hearing to a court trial on an excessive assessment, it is apparent that a trial offers significant safeguards that provide further advantages to property owners who may pursue such court actions.

¶ 29. First, a court trial allows property owners to present their case in a forum that is conducted according to the rules of evidence and discovery. In contrast, evidence is not presented in this manner at the board. In particular, at the board hearing, evidence is presented only through sworn, oral testimony, Wis.

106

Stat. § 70.47(8), and only the board may compel pro-
duction of documents, § 70.47(8)(d). Such informal
proceedings may lead to an incomplete or an inade-
quate record. *See Hemker,* 114 Wis. 2d at 323.
Nevertheless, the board renders a decision based on
this record.

¶ 30. Second, at a court trial, property owners
can subpoena witnesses to testify at trial. In contrast,
at the board of review hearing, only the assessor is
required to appear, Wis. Stat. § 70.48, and only the
board may, and upon the request of the assessor shall,
subpoena other witnesses to appear, Wis. Stat.
§ 70.47(8)(d).

¶ 31. Third, a court trial is conducted by a judge;
the board of review proceedings are not necessarily
conducted by such legal professionals who are versed in
the rules of evidence. The membership and organiza-
tion of the board of review varies depending on the size
of the municipality and the nature of the assessment
system, and the board may contain any number of
town, city, or village residents; public officers; and pub-
lic employees. *See* Wis. Stat. § 70.46(1).

¶ 32. Fourth, property owners are typically
afforded a greater amount of time to prepare their case
at the circuit court level than before the board of
review. The final assessments by the assessor and the
delivery of the assessment roll takes place only a short
time before the board of review meets.[11] Indeed, notice

---

[11] Property assessment must be handled in a timely man-
ner by the assessor. Assessors must assess all real and personal
property as of the close of January 1 of each year. Wis. Stat.
§ 70.10. Except in first and second class cities that have a board
of assessors, the assessments must be completed before the first
Monday in April, Wis. Stat. § 70.10, and the assessor must
deliver the completed roll and all sworn statements and valua-

must be provided to property owners 15 days before the board meeting when property is assessed at a different value than the previous year. Wis. Stat. § 70.365. However, property owners are then immediately required to file an objection before the meeting, and the board only has to provide property owners with 48 hours notice before the hearing. *See* Wis. Stat. § 70.47(3)(a)5., (7)(a). The additional time afforded through a court trial enables property owners to better prepare their case.

¶ 33. On the whole, these differences show that a property owner who is permitted to pursue a circuit court action is treated significantly different than property owners who are limited to mere certiorari review in the circuit court. Thus, having reached this conclusion, we continue to the next step of our equal protection analysis: rational basis.

¶ 34. In addressing whether the legislature had a rational basis in establishing the classification under Wis. Stat. § 74.37(6), Nankin asks us to look at where the legislature drew the "line of demarcation" for the classification, that is, the line that separates the favored and disfavored classes. We examined a similar "line of demarcation" in *Milwaukee Brewers* for purposes of equal protection analysis. *Milwaukee Brewers*, 130 Wis. 2d at 104–05. In this case, Nankin correctly asserts that the line is drawn at the county border, based on the population of the county. The question then becomes whether there is a rational explanation for the legislature to have drawn the line at this border

tions of personal property to the clerk of the taxation district by the first Monday in May, Wis. Stat. § 70.50. The board then is required to meet at any time during the 30-day period beginning on the second Monday of May. Wis. Stat. § 70.47(1).

under a statute that affords property owners the right to challenge their property assessments made by a municipality within that border.

¶ 35. We have upheld classifications based on population on several occasions. *See, e.g., Libertarian Party v. State,* 199 Wis. 2d 790, 546 N.W.2d 424 (1996) (per curiam); *Johnson v. City of Milwaukee,* 88 Wis. 383, 60 N.W. 270 (1894). In fact, we have noted that it is no longer open to doubt that counties may be classified according to population. *Vill. of Whitefish Bay v. Milwaukee County,* 224 Wis. 373, 377, 271 N.W. 416 (1937). However, such classifications are not without limitations.

> It is a mistaken idea that because classification on the basis of population is sustainable in respect of legislation on certain subjects, it may be appropriate for all purposes of classification in legislative enactments. Such a basis for classification must have a reasonable relation to the purposes and objects of the legislation, and must be based upon a rational difference in the necessities or conditions found in the groups subjected to different laws. If no such relation and differences exist, the classification is invalid.

16B Am.Jur.2d *Constitutional Law* § 845 (1998) (footnotes omitted); *see also Chicago Nat'l League Ball Club, Inc. v. Thompson,* 108 Ill. 2d 357, 369, 483 N.E.2d 1245 (1985).

¶ 36. Nankin argues that the line of demarcation is irrational in this case because property assessments and reviews of these assessments are conducted at the municipal government level, not at the county level. In light of this fact, Nankin asserts that it may have been rational for the legislature to have drawn the line based on the population of the municipality and

thereby restricting some municipalities from pursuing an action under Wis. Stat. § 74.37(3)(d). However, it was irrational for the legislature to have drawn the line at the county border, and therefore, it is a violation of equal protection.

¶ 37. A review of the legislative history for Wis. Stat. § 74.37(6) and its predecessor Wis. Stat. § 74.73(4) (1955) shows that the legislature did not articulate any rationale for its classification. Therefore, we are obligated to construct a rationale. To aid in our determination, the Village offers two reasons for the classification. First, it asserts that the judicial workload in a county with a large population is substantially more than in a county with a small population, and by prohibiting § 74.37(3)(d) actions in counties with a large population, the judicial workload becomes more manageable. Second, it argues that, by restricting owners of property located in counties with a large population to certiorari actions, review of these assessments may occur at a faster pace, because circuit courts must give preference to such certiorari actions. *See* Wis. Stat. § 70.47(13). This is important, the Village asserts, because it depends on the tax collected on property for their budgets.

¶ 38. We conclude that neither explanation serves as a rational basis for the classification. In short, judicial workload and timely resolution of property assessments are concerns of all counties. Certainly, the volume of cases in the circuit court differs between counties; however, as Nankin asserts, the legislature has sought to offset such disparities between counties by awarding each county a certain amount of judicial branches depending on such volume. *See* Wis. Stat. § 753.06.

██

¶ 39. We have stated that a legislative classification will satisfy the rational basis standard if it meets the following five criteria:

(1) All classification[s] must be based upon substantial distinctions which make one class really different from another.

(2) The classification adopted must be germane to the purpose of the law.

(3) The classification must not be based upon existing circumstances only. [It must not be so constituted as to preclude addition to the numbers included within the class].

(4) To whatever class a law may apply, it must apply equally to each member thereof.

(5) That the characteristics of each class should be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation.

*Aicher*, 2000 WI 98, ¶ 58 (alterations in original). Under this test, the first, second, and fifth criteria are not satisfied.

¶ 40. The classification under Wis. Stat. § 74.37 is based upon the population of a county. Thus, applying the first factor, population must constitute a substantial distinction, such that it makes the class created by the statute really different from other classes. We have indicated that population constitutes a substantial distinction when the classes have different needs, conditions, or requirements with respect to purposes of the legislation such that a statutory classification is justified to account for these differ-

ences. *See Johnson*, 88 Wis. at 390–91; *cf. City of Brookfield v. Milwaukee Metro. Sewerage Dist.*, 144 Wis. 2d 896, 916, 426 N.W.2d 591 (1988).

¶ 41. In this case, however, population does not constitute a substantial distinction that makes one class really different from another. There is nothing inherent about populous counties to justify the classification in the statute that restricts the manner in which owners of property located in such counties may challenge their assessments. Populous counties do not afford any additional means to address property assessments such that a Wis. Stat. § 74.37 action is unnecessary in such counties. Moreover, populous counties do not present any special problems or concerns such that it is rational to restrict such circuit court actions in populous counties. Indeed, owners of property located in populous counties—particularly owners of property located in towns, villages, and small cities in the county—have as great an interest in obtaining a court trial on their property assessment as owners of property located in other counties in the state. There is no reason why an owner of property located in the Village of Shorewood in Milwaukee County should be treated differently than an owner of property in the Village of Amherest in Portage County with respect to challenging their property assessments. No substantial distinction exists.

¶ 42. The second factor is also not met in this case because the classification is not germane to the purpose of the law. The purpose of the law is to afford property owners a means to challenge their property assessments. Assessments and board of review hearings are conducted at the municipal level. There is no justification for using the population of a county in legislation that is based on a municipal function. Fur-

112

ther, as mentioned, there is no justification in prohibiting only owners of property in populous counties from challenging their property assessments under Wis. Stat. § 74.37. Judicial resources in all counties are equally burdened by § 74.37 actions; it cannot be said that populous counties, with their additional judicial resources, are in need of greater relief in this respect than other counties.

¶ 43. Finally, the fifth prong of the test is also not met. Under this prong, we examine whether the characteristics of each class are so far different as to reasonably suggest at least the propriety, as to the public good, of substantially different legislation. This factor is based on the following reasoning:

> "The true practical limitation of the legislative power to classify is that the classification shall be based upon some apparent natural reason,—some reason suggested by necessity, by such a difference in the situation and circumstances of the subjects placed in different classes as suggests the necessity or propriety of different legislation with respect to them."

*State ex rel. Risch v. Bd. of Trs. of Policemen's Pension Fund*, 121 Wis. 44, 54, 98 N.W. 954 (1904) (quoting *Nichols v. Walter*, 37 Minn. 264, 272, 33 N.W. 800 (1887)). We are unable to identify any difference in situation or circumstance between properties located in populous counties and properties located in other counties in the state that would necessitate different legislation for the classes in challenging their property assessment. Properties in both classes are assessed and reviewed in the same manner, regardless of the population of the county in which the property is located. Again, there is nothing to distinguish property situated in Shorewood from property located in any

other village throughout the state with respect to the assessment of property. Thus, an analysis under these factors supports our conclusion that this classification is not supported by a rational basis.

¶ 44. Certainly, the legislature may create a classification in a statute based on population. In fact, we upheld such a classification in *State ex rel. Johnson v. Cady*, 50 Wis. 2d 540, 185 N.W.2d 306 (1971).[12] *Cady* involved a dispute over whether a certain legislative scheme for providing revocation hearings to probationers violated equal protection. *Id.* at 550–51. The scheme provided that probationers in counties with a population of less than 500,000 would be in the legal custody of an administrative agency while probationers with a population of 500,000 or more would be in the custody of the probation departments of the criminal branches of the circuit courts. *Id.* at 552. As a result, probationers in small counties would receive an administrative hearing, while probationers in large counties would receive a judicial hearing. *Id.* at 551. We noted that such classifications by population violated equal protection only where they were found irrational and arbitrary, that is, where the legislature abused its discretion beyond a reasonable doubt. *Id.* at 552. We concluded by stating that "[w]e are not convinced that a classification established by the legislature, which provides for different procedures in counties having a population of more than 500,000, is irrational or arbitrary. Thus, the difference in procedure does not offend the constitutional provisions requiring equal protection of the law." *Id.* at 553.

[12] *See also City of Marshfield v. Town of Cameron*, 24 Wis. 2d 56, 62–64, 127 N.W.2d 809 (1964) (upholding classifications based on county population where the statute pertained to apportionment of public utility taxes to school districts).

¶ 45. The Village argues that *Cady* supports its position that the classification under Wis. Stat. § 74.37(6) does not violate equal protection. However, the differences in procedure in *Cady* did not meet the high standard required for proving an equal protection violation. Since *Cady*, however, we have determined that substantial differences in procedure may offend equal protection guarantees in certain instances if there is no rational basis to support these differences. *See Milwaukee Brewers*, 130 Wis. 2d at 106 (finding that two legislative provisions relating to administrative and judicial review procedures violated equal protection). In this case, Nankin has likewise proven beyond a reasonable doubt that the classification at issue violates equal protection because it treats members of classes significantly different without a rational basis. In turn, although *Cady* shows that classifications by population are permissible in some cases, it does not limit our holding in this case.

¶ 46. In sum, we conclude that the statute's disparate treatment of Nankin and other owners of property located in populous counties is without a rational basis, and as a result, the statute violates equal protection.

¶ 47. We recognize that our determination—that Wis. Stat. § 74.37(6) violates equal protection—is in direct contrast to the conclusion reached in *S.C. Johnson*. In *S.C. Johnson*, relying on *Cady*, the court of appeals concluded that "[g]iven the deference which the law accords classifications based on population, we see nothing irrational or arbitrary in the legislative scheme at issue in this case." *S.C. Johnson*, 206 Wis. 2d

at 308. However, based on our analysis above, we find the statute both irrational and arbitrary, and therefore, we conclude that *S.C. Johnson* incorrectly decided this issue. As a result, we overrule that portion of *S.C. Johnson*.

## SEVERABILITY

¶ 48. The legislature provides for the severability of statutes under the general rules of statutory construction. Specifically, Wis. Stat. § 990.001(11) provides:

> The provisions of the statutes are severable. The provisions of any session law are severable. If any provision of the statutes or of a session law is invalid, or if the application of either to any person or circumstance is invalid, such invalidity shall not affect other provisions or applications which can be given effect without the invalid provision or application.

Thus, this language generally allows for severability when the invalid section can be severed without affecting the remainder of the statute.

¶ 49. We have likewise stated that severability is appropriate under such circumstances. However, we have required that an examination of legislative intent must take place first:

> "Whether an unconstitutional provision is severable from the remainder of the statute in which it appears is largely a question of legislative intent, but the presumption is in favor of severability." "Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law."

116

*State v. Janssen*, 219 Wis. 2d 362, 379, 580 N.W.2d 260 (1998) (citations omitted).

¶ 50. The legislative history of Wis. Stat. § 74.37(6), including the history of its predecessor Wis. Stat. § 74.73(4) (1955), reveals that the classification has been a part of the statute since 1955, when claims for excessive assessment were first permitted in the circuit court. *See* ch. 440, Laws of 1955. However, nothing in the legislative history reveals that the legislature intended that any part of the statute would not be severable from the whole. Indeed, as § 74.37 currently stands, subsection (6) may be severed and the remainder of the statute will remain fully operative. Thus, because the legislature has not indicated its intent otherwise, we conclude that § 74.37(6) is severable from the remainder of the statute.

## CONCLUSION

¶ 51. Based on our analysis above, we conclude that Nankin has met his burden of proving that Wis. Stat. § 74.37(6) is unconstitutional as a violation of equal protection. The classification established in this statutory section treats members of the class significantly different than members outside the class. We cannot determine any rational basis for this disparate treatment. Accordingly, we find this statutory section unconstitutional. We reverse the decision of the court of appeals and grant summary judgment in favor of Nankin. We also grant Nankin's request for a permanent injunction to allow him to file a claim under § 74.37 with the Village. We deny his request for costs associated with this case.

*By the Court.*—The decision by the court of appeals is reversed.

¶ 52. DIANE S. SYKES, J., did not participate.

¶ 53. N. PATRICK CROOKS, J. *(dissenting).* I cannot join the majority's opinion because it fails to accord to the legislature's classification the presumption of constitutionality to which it is entitled. Nothing that Nankin or the majority has presented convinces me that Wis. Stat. § 74.37(6) is unconstitutional beyond a reasonable doubt. By focusing on procedural differences, rather than the rationale for allowing property owners in less populous counties the additional remedy of court review of their tax assessments, the majority has second-guessed a presumptively reasonable statute that has guided this state for 45 years. The legislature chose to allocate remedies regarding review of property tax assessments on the basis of population. Less populated counties received three remedies; counties with 500,000 or more people received two remedies. This statute is constitutional because the population distinction is intended to relieve the judicial burden in populous courts.

¶ 54. Through its holding the majority has also called into question the myriad of other statutes which are based upon population differences. The legislature needs to be able to make policy decisions based upon the various demands which accompany differences in population. Here, the legislature made a policy decision to give one more remedy to less populated counties than to the populous counties, in order to prevent overburdening the populous counties' courts. So long as there is *any* reasonable basis for this legislation, we should uphold it.

¶ 55. Wisconsin Stat. § 74.37 allows *all* property owners the following avenues of review of their prop-

erty tax assessments. Property owners can have their assessment reviewed by a board of review under Wis. Stat. § 70.04. They can then have the board's decision reviewed by certiorari to a circuit court under § 70.47(13). Alternatively, if the assessment is under $1 million, they can file a complaint with the Wisconsin Department of Revenue in accord with § 70.85. Those who own property in counties with less than 500,000 have the *additional* option under § 74.37 of submitting a claim for excessive assessment, and, if the tax district or county disallows that claim, they may seek *de novo* review by initiating a claim in circuit court to recover the allegedly excessive assessment. This additional option does not, contrary to the majority's conclusion, mean that the legislature has irrationally deprived property owners in counties with a population of 500,000 or more of equal protection under the law.

¶ 56. As the majority acknowledges, this court must examine whether the legislature's choice to classify according to population is supported by a rational basis. Majority op. at ¶ 11. If the legislative history does not provide the rational basis, the court must construct one, if possible. *Sambs v. City of Brookfield*, 97 Wis. 2d 356, 371, 293 N.W.2d 504 (1980). The legislative history of Wis. Stat. § 74.37(6) does not articulate a rationale for the population classification, so it is unclear why the majority discussed the legislative history at such length.

¶ 57. The rationale for Wis. Stat. § 74.37(6) seems clear from an analysis of the statute itself. The additional process of *de novo* review would be too burdensome on the more populous counties. The burden on a populous county, and the concomitant burden on its courts, is already evident as only Milwaukee County Circuit Court has 47 branches, 29 more than the next

busiest circuit court, Dane County. Wis. Stat. App. pp. 5849–5850 (1999–2000). Furthermore, Milwaukee County alone comprises a judicial administrative district, Amicus Curiae Br. at 4 n.3, and Court of Appeals District I also serves only Milwaukee County. Wis. Stat. App. p. 5645. Currently, Milwaukee County alone experiences this burden of population, but other counties are certainly growing in population, and will likely join the classification in the future. Over 120 years ago, the United States Supreme Court recognized the burden of population on the courts and that the legislature should be able to take this into consideration.

> ". . . A uniformity which is not essential as regards different States cannot be essential as regards different parts of a State, provided that in each and all there is no infraction of the constitutional provision. Diversities which are allowable in different States are allowable in different parts of the same State. . . .Large cities may require a multiplication of courts and a peculiar arrangement of jurisdictions. It would be an unfortunate restriction on the powers of the State government if it could not, in its discretion, provide for these various exigencies."

*State ex rel. Johnson v. Cady*, 50 Wis. 2d 540, 551, 185 N.W.2d 306 (1971) (quoting *Missouri v. Lewis* 101 U.S. 22, 25 (1879)). As the United States Supreme Court has recognized how population places a burden on the courts, this court should have considered whether the legislature reasonably wanted to ease the additional burden of § 74.37 on populous counties.

¶ 58. For nearly a century, this court has held that the legislature may classify counties according to population. *State ex rel. Scanlan v. Archibold* 146 Wis. 363, 131 N.W. 895 (1911); *see also Village of Whitefish*

*Bay v. Milwaukee County*, 224 Wis. 373, 377, 271 N.W. 416 (1937). "That counties may be classified according to population has been said to be no longer open to doubt." *Scanlan*, 146 Wis. at 370. Furthermore, for the last five years, *S.C. Johnson & Son, Inc. v. Town of Caledonia*, 206 Wis. 2d 292, 308, 557 N.W.2d 412 (Ct. App. 1996), *rev. denied*, 208 Wis. 2d 212, 562 N.W.2d 602 (1997), has specifically held that Wis. Stat. § 74.37(6) does not violate equal protection, because there is a rational relationship between the classification and a legitimate governmental purpose. The majority's decision today unfortunately has the effect of overruling this line of cases that support the legislature's classification based on population.

¶ 59. In addition to overruling clear precedent, the majority now makes numerous other statutes vulnerable to an equal protection challenge. There are at least *175* Wisconsin Statutes that classify according to population. Of those, there are at least *24* that, without dispute, explicitly regulate activity based on the same population classification of "counties having a population of 500,000 or more." Wis. Stat. §§ 45.058 (memorials in populous counties), 46.215 (county department of social services in populous counties), 46.48 (grants for community programs), 48.07 (additional sources of court services), 48.561 (child welfare services in populous counties), 48.58 (county children's home), 49.025 (relief block grant to populous counties), 51.08 (maintenance of mental health complex), 59.20 (election of county officers), 59.60 (budgetary procedures), 59.79 (county board functions), 59.80 (crime commission), 59.82 (cash flow designation), 60.05 (razing buildings and excavations), 75.67 (procedures for authorized cities), 167.27 (capping and filling wells or similar structures), 228.02 (certification of records),

228.03 (copy deemed original record), 228.04 (inspection and copies of records), 228.05 (marginal references in records), 228.06 (corrections and alterations of records), 252.076 (joint county home and county tuberculosis sanatorium), 799.05 (language of small claims summons), and 938.06 (services for court). These statutes are further justification for the conclusion that population is a distinguishable characteristic for legislation. In fact, there is an entire chapter in the statutes dealing only with the treatment of records in populous counties and cities. Wis. Stat. Ch. 228. Because the majority neglects to provide guidance regarding what is a rational distinction, these statutes, as well as all other classifications based on population, are now vulnerable to future equal protection challenges.

¶ 60. In arriving at its conclusion, the majority assumes that towns and villages in counties with a population of less than 500,000 are similarly situated to those in counties with a population greater than 500,000. Since this is just an assumption, it can reasonably be argued that towns and villages in counties with a population greater than 500,000 are not so similarly situated.

¶ 61. The majority also assumes that the legislature cannot make a distinction as to remedies based on classifications. Yet, this is exactly what the legislature has done with workers' compensation. The Worker's Compensation Act, Wis. Stat. Ch. 102, distinguishes remedies for injuries, based on the classification of employment, in order to ensure that covered employees who become injured or ill receive prompt and comprehensive medical care. *UFE Inc. v. Labor & Indus. Review Comm'n*, 201 Wis. 2d 274, 288, 548 N.W.2d 57 (1996).

¶ 62. The majority struck down Wis. Stat. § 74.37(6) because the statute distinguished remedial procedures on the basis of population. However, this is the same legislative classification this court upheld in *State ex rel. Johnson v. Cady*, 50 Wis. 2d 540, 185 N.W.2d 306 (1971). In *Cady*, this court upheld, against an equal protection challenge, a statute which provided different remedies on the basis of population. 50 Wis. 2d at 553. The statute at issue in *Cady* distinguished between probation revocation procedures. Probationers in counties with a population of less than 500,000 received an administrative hearing upon revocation. *Id.* at 551. Probationers in a county having a population of more than 500,000—Milwaukee County—received a judicial hearing upon revocation. *Id.* at 550. The court upheld the statute, stating: "We are not convinced that a classification established by the legislature, which provides for different procedures in counties having a population of more than 500,000, is irrational or arbitrary. Thus, the difference in procedure does not offend the constitutional provisions requiring equal protection of the law." *Id.* at 553.

¶ 63. Even though the similarities between this case and *Cady* are striking, the majority nonetheless attempts to distinguish *Cady*. Majority op. at ¶ 45. The legislative classification is exactly the same, as both distinguish counties with a population of less than 500,000 from counties with a population of 500,000 or more. *See Cady*, 50 Wis. 2d at 552. Furthermore, just like here, where the population classification determines the remedial procedure for review of tax assessments, the population classification in *Cady* determined the remedial procedures for probationers. And just like here, the population classification determines the difference between an administrative

123

hearing and a judicial hearing.[1] This court found in *Cady* that an identical statutory classification–based on population - was not "irrational and arbitrary," *Cady*, Wis. 2d at 553, and the majority's attempts to distinguish it are not convincing.

¶ 64. Moreover, the majority hangs its hat on the differences between certiorari review and *de novo* review. Majority op. at ¶ 25. *Cady* implicitly rejected this distinction, however, by concluding that, for the purposes of equal protection, there is no substantial difference between certiorari review of the administrative hearing of probation revocation and a judicial hearing (*de novo*) for a probationer in Milwaukee County. Here, the difference is even less significant because residents of all counties have access to certiorari review in the circuit courts. The legislature has simply chosen to provide an additional remedy of *de novo* review to residents in less populous counties.

¶ 65. Without meaningful distinction, the majority refuses to rely on the similarities in *Cady*. The majority also fails to recognize that if there was ever a situation to require absolute equal treatment of individuals, it would be in the situation such as *Cady*,

---

[1] While the classification distinctions are the same, the difference between this case and *State ex rel. Johnson v. Cady*, 50 Wis. 2d 540, 185 N.W.2d 306 (1971), is the review granted to each population class. In *Cady*, probationers in the populous county received a judicial hearing and all other probationers received an administrative hearing followed, if desired, by certiorari review. 50 Wis. 2d 540, 549–51, 185 N.W.2d 306 (1971). The opposite is true in this case. Residents of the populous county receive administrative review and certiorari review in the circuit court, of their tax assessments. All other residents have administrative review, certiorari review, and the additional remedy of *de novo* review in the circuit court.

where probationers are being returned to prison. This court held in *Cady*, that even in a situation where a person's conditional liberty is at stake, it is not a violation of equal protection for the legislature to designate on the basis of population, procedures available to provide a remedy. Reviewing tax assessments has less severe consequences than the loss of liberty.[2]

¶ 66. In addition to the statute in *Cady*, the legislature has distinguished procedures on the basis of population in numerous other statutes as well. For example, under Wis. Stat. § 938.06, a populous county is required to operate a children's court center and in a less populous county the county department provides intake services. Under § 59.20, residents of a less populous county elect a county coroner and county surveyor, but residents of a county with a population greater than 500,000 do not. Section 74.37(6) should be upheld, because it does not deprive any individual of a review of a property tax assessment; the legislature simply chose to provide an additional remedial procedure to property owners in less populous counties.

¶ 67. The law provides us with a presumption when deciding whether a legislative classification violates equal protection guarantees. The presumption is exactly opposite of the majority's assumption that the legislature cannot make a distinction based on population. The court must presume that the legislative classification is constitutional. *Milwaukee Brewers Baseball Club v. DHSS*, 130 Wis. 2d 79, 387 N.W.2d 254 (1986). The court must also "indulge every pre-

---

[2] Also, arguably, in *Cady*, it would be more of a burden on the populous county courts to provide a judicial hearing for probation revocation. *See* ¶ 57 herein. Yet, this court determined that distinguishing according to population was neither irrational nor arbitrary. *Cady*, 50 Wis. 2d at 553.

sumption to sustain the law if at all possible" and resolve all doubts "in favor of the reasonableness of the classification." Majority op. at ¶¶ 10, 11. Such presumption must be overcome, if it is to be overcome, beyond a reasonable doubt. *Milwaukee Brewers*, 130 Wis. 2d at 99. In reaching its conclusion, the majority fails to apply the proper presumption in favor of constitutionality.

¶ 68. Contrary to the majority's conclusion, this is not the situation we had before us in *Milwaukee Brewers*. The challengers in *Milwaukee Brewers* were residents of a six-block area that were singled out by legislation, and given only the meaningless option of an informational hearing as the process to challenge an Environmental Impact Study (EIS) for building a prison. *Milwaukee Brewers*, 130 Wis. 2d at 96–97. This case is different because all taxpayers, including residents in Milwaukee County, are entitled to a meaningful review of their assessment by a board of review. Even without the additional claim procedure, Milwaukee County residents, unlike the challengers in *Milwaukee Brewers*, have such a meaningful right.

¶ 69. The situation in *Milwaukee Brewers* was also different because it involved new legislation, so far limiting the process to challenge an EIS review, that it essentially prevented residents from contesting the prison location. *Id.* at 105–106. The instant case involves a statute that has been on the books for 45 years, and the majority now, in effect, removes it, without hesitation, by holding that it is unconstitutional.

¶ 70. This legislative classification based on population is constitutional, because it meets all five of the criteria discussed by the majority as necessary to meet the rational basis standard.

(1) All classifications must be based upon substantial distinctions which made one class really different from another.

(2) The classification adopted must be germane to the purpose of the law.

(3) The classification must not be based upon existing circumstances only and must not be so constituted as to preclude addition to the numbers included within a class.

(4) To whatever class a law may apply, it must apply equally to each member thereof.

(5) The characteristics of each class could be so far different from those of other classes as to reasonably suggest at least the propriety, having regard to the public good, of substantially different legislation.

*Milwaukee Brewers*, 130 Wis. 2d at 97.

¶ 71. Under the first criteria, the majority justifies its decision by denying that population makes one class "really different from another." Majority op. at ¶ 41. The majority refuses to recognize that population distinguishes classes with different needs, conditions, or requirements with respect to the burden on the courts. *See* majority op. at ¶ 40. Through its denial, the majority fails to recognize that certain benefits inure to residents in populous counties. Residents of Shorewood, as well as all other residents of Milwaukee County, are benefiting explicitly from living in a county which contains the city of Milwaukee. As a first class city, Milwaukee gets benefits and aid to which other cities are not entitled, and, often, all of the county's residents, therefore, also receive a benefit. Unlike rural Forest County, Milwaukee County is eligible for relief block grants, Wis. Stat. § 49.025, and community program grants, § 46.48. As a result of the benefits exclusive to Milwaukee County, municipalities in Mil-

waukee County, including Shorewood, benefit from the population distinction.

¶ 72. The majority also contradicts itself by first denying that population is a distinguishable factor, and later specifically recognizing legislative classifications based on population. Majority op. at ¶ 17. In footnote seven, the majority acknowledges that how tax assessment contests are heard depends on population, which directly contradicts its position that population is not a distinguishable factor. Indeed, this is direct evidence that population is a distinguishable factor, and demonstrates how the legislature regulates activity as a result of population.

¶ 73. The population classification satisfies the second criteria, because the classification adopted is germane to the purpose of the law. *Milwaukee Brewers*, 130 Wis. 2d at 97. The majority simply relies on its denial that population is a substantial distinction in finding that the classification does not meet this factor, in regard to a rational basis determination. As recognized in the list of statutes above, the legislature uses population as a distinguishing factor, because population has a direct effect on the burdens placed on counties. It is entirely reasonable for the legislature to choose, due to population, not to further burden the courts in populous counties. This is a rational basis to uphold § 74.37(6), and to find it constitutional.

¶ 74. The majority further believes that distinguishing population at the county line is not justified because property assessments are reviewed at the municipal level. Majority op. at ¶ 42. What the majority overlooks, however, is that Wis. Stat. § 74.37 provides for review in the circuit courts, which are organized by county. Because the legislature wanted to prevent further burdening the circuit courts in popu-

lous counties, it was entirely reasonable to distinguish population at the county line.

¶ 75. The majority fails to give the judicial burden rationale the weight it deserves, and simply dismisses it by stating, "judicial workload and timely resolution of property assessments are concerns of all counties." Majority op. at ¶ 38. However, this was the legislature's choice, and the legislature appears to have concluded that, for populous counties, the judicial workload was already too much. "Any reasonable basis for the classification will validate the statute." *Milwaukee Brewers*, 130 Wis. 2d at 99.

¶ 76. Although completely ignored by the majority, the third and fourth criteria for a rational basis determination are also satisfied by the population classification in § 74.37(6). Under the third factor, the classification does not rest only on existing circumstances, as others could be added to the class. Currently, only Milwaukee County is a member of the class, but as other counties grow, they will join the class as they reach the 500,000 mark. *See Scanlan*, 146 Wis. at 370 (recognizing that other counties "may grow into the class.")

¶ 77. The population classification also satisfies the fourth criteria since Wis. Stat. § 74.37(6) applies equally throughout the class. None of the property owners in counties with more than 500,000 people have access to the additional claim procedure.

¶ 78. Finally, the population classification also meets the fifth prong of the test, because the characteristics of each class could be so far different from the other class reasonably to suggest the propriety, in light of the public good, of substantially different legislation. Similar to the first factor, the majority finds itself "unable to identify any difference" based on population

"that would necessitate different legislation for the classes in challenging their property assessment." Majority op. at ¶ 43. The population difference suggests that allowing more populous counties access to the additional excessive assessment claim procedure in Wis. Stat. § 74.37 might actually run afoul of the public good. Apart from the burden of the claim procedure on Milwaukee County and the tax districts in the county, having the circuit courts hold *de novo* trials on allegedly excessive assessments would be burdensome. Also, there may be other justifications for the additional procedure only in less populated counties. Many counties with smaller populations may have assessors, and those on the boards of review, that a majority of the property owners know. Circuit court review of excessive assessments *de novo* provides an additional assurance that there is no favoritism in the assessment.

¶ 79. Since the majority concluded that Wis. Stat. § 74.37(6) was unconstitutional on equal protection grounds, it did not need to address Nankin's two additional constitutional challenges: One, that § 74.37(6) violates Article IV, Section 31 of the Wisconsin Constitution as a private or special law that assesses or collects taxes.[3] Two, that § 74.37(6) violates Article IV, Section 18 because it is a private or local law

---

[3] Article IV, Section 31 provides in pertinent part that "[t]he legislature is prohibited from enacting any special or private laws in the following cases:. . .[f]or assessment or collection of taxes or for extending the time for the collection thereof."

However, the legislature may legislate on any subject prohibited in Article IV, Section 31, so long as the legislation complies with Article IV, Section 32: "The legislature may provide by general law for the treatment of any subject for which lawmaking is prohibited by section 31 of this article. Subject to

which addresses more than one subject.[4] Section 74.37 violates neither constitutional provision, just as it does not violate equal protection.

¶ 80. Wisconsin Stat. § 74.37 indisputably pertains only to claims made on excessive assessments, and, as such, it has nothing at all to do with the assessment or collection of taxes. On that basis, § 74.37 does not violate Article IV, Section 31. Moreover, even if § 74.37 pertained to the assessment or collection of taxes, § 74.37 complies with the requirements for a "general" and "uniform" law under Article IV, Section 32. "This court has consistently applied certain rules for determining the legislature's competence under Wis. Const. art. IV, § 32 to pass laws affecting only certain entities, such as cities or counties of a certain class or size, notwithstanding the prohibitions of Wis. Const. article IV, section 31." *Libertarian Party of Wisconsin v. State*, 199 Wis. 2d 790, 803, 546 N.W.2d 424 (1996) (per curiam). These rules are the same five criteria or factors that comprise the standard for determining whether there is a rational basis for the legislative classification. *Id.*; *see also* ¶ 66 herein, above. Because the classification in § 74.37 is reasonable under the five prongs of that test, it is reasonable here, where §§ 31 and 32 of Article IV are at issue. "[I]f the legislation being challenged contains classifications which are open, germane, and relate to true differences between the entities being classified, then the legislation is considered general and of uniform application." *City of Brookfield v. Milwaukee Metro.*

---

reasonable classifications, such laws shall be uniform in their operation throughout the state."

[4] Article IV, Section 18 provides that "[n]o private or local bill which may be passed by the legislature shall embrace more than one subject, and that shall be expressed in the title."

*Sewerage Dist.*, 144 Wis. 2d 896, 911, 426 N.W.2d 591 (1988). In other words, even if § 74.37 addressed a tax assessment or collection, which it does not, it is a "general law" and "uniform" within the meaning of Article IV, Section 32, and therefore proper.

¶ 81. Wisconsin Stat. § 74.37 is also proper under Article IV, Section 18. Since the Article IV, Section 18 challenge arises in a classification context, the analytical framework is nearly the same as the five-part test used to evaluate equal protection and Article IV, Section 31 and Section 32 challenges. *See City of Brookfield*, 144 Wis. 2d at 911–12. The only difference is that the classification is not presumed to be constitutional. *Id.* at 912 n.5. However, even without this presumption, there is no indication that § 74.37 is "local" legislation in violation of Article IV, Section 18, even though "general in form." *See Village of Whitefish Bay v. Milwaukee County*, 224 Wis. 373, 378–79, 271 N.W. 416 (1937). At issue in *Whitefish Bay* was legislation that modified the allocation of collected delinquent taxes for municipalities in counties with a population of greater than 500,000. This court found that the classification did not make the law "local" (even though the only county with a population of greater than 500,000 was Milwaukee County) because the classification was an open one. That is, other counties could grow into it. The problem with the classification in *Whitefish Bay* was that it was not germane to any purpose of the law. "Counsel do not suggest, and we are unable to discover, any basis for classification resting upon population applicable to Milwaukee county that does not apply equally to every other county in the state so far as the distribution of tax moneys is concerned." *Id.* at 378. Here, in contrast, the classification is germane to the purpose of Wis. Stat. § 74.37(6), namely to relieve the

courts in the more populous counties from the additional burden of *de novo* review of allegedly excessive tax assessments.

¶ 82.　Based upon review of the five factors necessary to determine whether there is a rational basis which justifies the legislature's population classification, and especially given that the legislature's classifications are presumed to be constitutional, I cannot join the majority's opinion. Nothing Nankin or the majority has presented convinces me that the judicial burden rationale fails to provide a rational basis for the population classification, and that § 74.37(6) is unconstitutional beyond a reasonable doubt.

¶ 83.　For all of these reasons, I respectfully dissent.

¶ 84.　I am authorized to state that Justice JON P. WILCOX joins this opinion.