The SADDLE RIDGE CORPORATION,
Plaintiff-Respondent,

v.

BOARD OF REVIEW FOR TOWN OF PACIFIC,
Defendant-Appellant-Petitioner.

Supreme Court

*No. 2007AP2886. Oral argument April 12, 2010
—Decided June 18, 2010.*

2010 WI 47

(Also reported in 784 N.W.2d 527.)

For the defendant-appellant-petitioner there were briefs by *Amie B. Trupke* and *Stafford Rosenbaum LLP,* Madison, and oral argument by *Amie B. Trupke.*

For the plaintiff-respondent there was a brief by *Anthony A. Tomaselli, Andrew M. Norman, Josephine K. Benkers, and Quarles & Brady LLP,* Madison, and oral argument by *Josephine K. Benkers.*

An amicus curiae brief was filed by *Jonathan B. Levine, Jessica L. Boeldt, and the Law Firm of Jonathan B. Levine,* Milwaukee, on behalf of the Community Associations Institute Wisconsin Chapter, Inc.

An amicus curiae brief was filed by *Debra P. Condrad and Thomas D. Larson,* Madison, on behalf of the Wisconsin REALTORS® Association.

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. This is a review of an unpublished decision of the court of appeals,[1] which affirmed an order of the Circuit Court for Columbia County, James Evenson, Judge. The circuit court order granted Saddle Ridge Corporation's petition for a writ of certiorari pursuant to Wis. Stat. § 70.47(13) (2007–08),[2] and vacated the determination by the Board of Review of the Town of Pacific affirming a property tax assessment against Saddle Ridge.

¶ 2. The question presented is whether Saddle Ridge was properly assessed by the Town of Pacific for property tax due on 41 tax parcels in three condominiums developed by Saddle Ridge. These parcels correspond to 41 condominium units that are declared and platted in the condominium instruments but were not constructed at the time they were assessed by the Town. As stated by the Town, the issue is, "Who is

---

[1] *Saddle Ridge Corp. v. Bd. of Review for Town of Pacific,* No. 2007AP2886, unpublished slip op. (Wis. Ct. App. Aug. 27, 2009).

[2] All subsequent references to the Wisconsin Statutes are to the 2007–08 version unless otherwise indicated.

responsible for paying property taxes on declared but unbuilt condominium units?"[3]

¶ 3. For the reasons set forth, we conclude that the Board "acted according to law" in assessing Saddle Ridge for the unbuilt units. Saddle Ridge owns the declared but unbuilt condominium units and these unbuilt units are tax parcels, the assessment value of which is assessed to Saddle Ridge. Accordingly, we reverse the decision of the court of appeals, which affirmed the order of the circuit court. The Board of Review for the Town of Pacific got it right. Saddle Ridge's petition for a writ of certiorari should have been denied by the circuit court.

I

¶ 4. Before setting out the facts giving rise to this case, we briefly review the law of condominiums in Wisconsin.

¶ 5. The condominium form of ownership "is strictly a creature of statute in the United States and does not exist without enabling legislation."[4] Chapter 703 of the Wisconsin statutes, entitled the Condominium Ownership Act, governs condominiums.

---

[3] Two other issues were presented: (1) Is the property in condominiums assessable to its beneficial owner, just as all other real property is assessable to its beneficial owner? (2) Is the condominium developer the beneficial owner of the declared but unbuilt units?

Because we conclude that Saddle Ridge is responsible as the owner for paying property taxes on the declared but unbuilt condominium units based on our analysis of the statutes, we need not address these other two issues.

[4] Michael S. Green et al., *Wisconsin Condominium Law Handbook* § 1.4 (3d ed. 2006).

¶ 6. To create a condominium, a condominium declaration and a plat must be filed with the register of deeds.[5] The condominium is defined as the property that has been subject to a condominium declaration under the statutes. Wis. Stat. § 703.02(4). Once the declaration and plat are properly recorded, the condominium exists regardless of whether any units have been constructed. Wis. Stat. § 703.07(1).

¶ 7. The Condominium Ownership Act establishes mandatory provisions for the contents of both the declaration and the plat. Wis. Stat. §§ 703.09, 703.11.

¶ 8. The person who creates a condominium by subjecting the property to a condominium declaration is referred to as the "declarant." Wis. Stat. § 703.02(7).

¶ 9. The condominium property is made up of two legal components: "units" and "common elements."

¶ 10. "Units" are defined by Wis. Stat. § 703.02(15) as the "part of a condominium intended for any type of independent use, including one or more cubicles of air . . . or one or more rooms or enclosed spaces located on one or more floors, or parts thereof, in a building." The declaration must contain a description of each unit and the condominium plat must designate every unit within the condominium at the time it is filed. Wis. Stat. § 703.11(3). Designating units creates tax parcels. Wis. Stat. § 703.21(1). Individual unit owners hold legal title to the condominium units. Wis. Stat. §§ 703.02(17), 703.05.

¶ 11. The "common elements" are "all of a condominium except its units." Wis. Stat. § 703.02(2). The condominium declaration must contain "a general description" of the common elements. Wis. Stat. § 703.09(1)(d). Every unit owner owns an undivided

---

[5] Wis. Stat. § 703.07; *see also* Green, *supra* n.4, § 4.10.

percentage interest in the common elements. Wis. Stat. § 703.13(1). The declaration must set out the percentage interest "appurtenant to each unit." Wis. Stat. §§ 703.09(1)(e), 703.13. The percentage interests must "have a permanent character" and generally may not be changed without the written consent of all unit owners and their mortgagees. Wis. Stat. § 703.13(4).

¶ 12. A declarant may establish the condominium as "expandable" by following the requirements set out in Wis. Stat. § 703.26. The declarant may then add property and additional units to the condominium. To do so, the declarant must record an amendment to the declaration that states the new percentage interests of the unit owners and must record an addendum to the condominium plat that includes detail and information about the new property, as required in the original plat, including a survey of the added property, building plans, and information about the units and common elements. Wis. Stat. § 703.26(3), 703.11(2).

¶ 13. Other statutory provisions will be discussed below. We now set out the facts giving rise to the dispute.

## II

¶ 14. Saddle Ridge developed three condominiums at issue in the present case and is the declarant of each condominium.[6] Saddle Ridge recorded the condominium declarations and plats showing all the units, including the presently unbuilt ones. The record before us contains only undated excerpts of the condominium instruments, but at least one of the three condomini-

---

[6] The three condominiums are Saddle Ridge Estates Condominium, The Forest at Swan Lake Village Condominium, and Saddle Ridge Condominium.

ums was apparently first declared as a condominium in 1968. Saddle Ridge has the sole right to develop and sell the unbuilt units.

¶ 15. In 2006, each of the three condominiums included some unbuilt units. In the three condominiums, 41 units are included in the declarations and plats but are not yet constructed.[7] These 41 declared condominium units correspond to the 41 tax parcels Saddle Ridge contests.

¶ 16. The condominiums are subject to property tax assessment by the Town of Pacific. In 2005, and apparently in preceding years, the Town assessed these parcels to Saddle Ridge. The 2005 assessment value for each of the 41 parcels was $5,000.[8]

¶ 17. In 2006, the assessment value for each of the unbuilt units increased. The Town sent Notice of Assessment to Saddle Ridge, assessing each of the 41 parcels at $32,000. The table identifying the parcels and assessment values is titled "Real Estate Sites." It identifies which condominium each parcel is within and gives both a unit number and a tax parcel number for each. The Assessment table lists the size of each parcel as "0.0000" acres.

¶ 18. Saddle Ridge contested the 2006 assessments. In its objection, Saddle Ridge explained its reason for challenging the assessment values of the 41 parcels: "These parcels are bare land and will not

---

[7] In 2006, Saddle Ridge Estates included 132 built units and 17 unbuilt units; The Forest at Swan Lake Village Condominium included 42 built and 20 unbuilt units; the Saddle Ridge Condominium included 127 built and 4 unbuilt units.

[8] Although documentation of prior tax years is not part of the record here, at the hearing before the Board of Review, one member of the Board commented, "that assessment rate went uncontested for ten years."

become a unit until a structure is added. These parcels cannot be sold." Where it was required to state an opinion of the "fair market value of the property," Saddle Ridge stated: "The land is owned by Saddle Ridge Estates Association."[9] Saddle Ridge then added, "$00.00 should be taxed."[10]

¶ 19. Saddle Ridge signed a stipulation with the Board of Review, waiving the right to have a separate hearing on each parcel and agreeing that the 41 objections would be consolidated together into one hearing.

¶ 20. The Board of Review held a hearing on Saddle Ridge's consolidated objections on November 2, 2006. At the hearing, the Board heard from representatives of Saddle Ridge and from the Assessor.[11] Saddle Ridge's representatives maintained that each parcel was not a condominium "unit" and would not become a unit "until it is four walls or a cubicle of air or a building." Saddle Ridge relied on Wis. Stat. § 703.21, which states in part that "[n]either the building, the property nor any of the common elements shall be deemed to be a parcel separate from the unit."

---

[9] Saddle Ridge Estates Association is the association of unit owners within the Saddle Ridge Estates condominium, a distinct entity from Saddle Ridge Corporation, the declarant and developer of the condominiums.

[10] From the record it appears that Saddle Ridge filed both a single objection covering all 41 contested parcels, as well as 41 individual objection forms, one for each parcel. Each stated nearly identical reasons for objection to the assessment.

However, in the individual objections, rather than "$00.00 should be taxed," Saddle Ridge stated "ø value—cannot tax development rights."

[11] The Board heard testimony and debated the issue at length. The transcript of the hearing is 115 pages long.

¶ 21. In particular, one Saddle Ridge representative argued: "We are being taxed . . . [for] units that do not exist. All there is there is land. . . . it's bare land owned by the condominium association. . . . I cannot sell that land. They own it. I have developmental rights through the Saddle Ridge Corporation. When I develop a building and make a cubicle of air around it, I can sell it . . . ." Saddle Ridge urged that "we should get no tax on those parcels . . . because the association owns them . . . ." At one point in the hearing, the Board chair asked a Saddle Ridge representative, "You're saying it doesn't become value until it's sold[?]" The response was, "Until it becomes a unit."

¶ 22. Saddle Ridge acknowledged at the hearing that the parcels are declared as units by the condominium declarations, with tax parcel numbers assigned by the county. One board member queried, "[W]hy are these even separate tax parcels when they don't exist?" And Saddle Ridge responded, "We have to declare how many units we're going to build in there when you declare a condominium. . . . And that's when the county picks it up and assigned [sic] separate tax parcels."

¶ 23. The discussion at the hearing also addressed how the assessor had arrived at the $32,000 assessment value. Two qualified assessors were present. The board was informed that the assessor's office used software approved by the Wisconsin Department of Revenue and used throughout the state and that the assessment for the parcels had been derived using "comparable vacant sales of condo land that is marketable." These comparable sales were described as "land condominiums," in which the vacant lots were available for sale before construction.

38

¶ 24. In contrast, the condominiums at issue here are not "land condominiums." Saddle Ridge could not sell any vacant land in the condominiums at issue here.

¶ 25. The assessor testified that "[a]ll comparable sales were adjusted for differences in subject properties," and stated that "there are, unfortunately, no vacant sales in the Saddle Ridge" that could be used for comparison. One Board member, who later argued that the assessment value should be less than $32,000, stated that "there's [sic] no comparable sales from the appellant because they can't sell vacant units. The comparable sales . . . were for land condos; different animal."

¶ 26. Saddle Ridge did not present the Board of Review with alternative comparables or suggest a lower valuation. It maintained that the assessment value of each unit should be zero.

¶ 27. After considerable discussion, some members of the Board moved to reduce the assessment to $5,000. No member of the Board moved to support Saddle Ridge's position that the parcels could not be taxed to Saddle Ridge at all. The motions to alter the assessment value failed, and the $32,000 assessment was upheld.

¶ 28. Saddle Ridge contested the determination of the Board by filing a petition for a writ of certiorari in Columbia County Circuit Court, pursuant to Wis. Stat. § 70.47(13). The circuit court granted Saddle Ridge's petition and remanded the matter to the Board, "to vacate the assessment against Saddle Ridge."

¶ 29. In its analysis the circuit court referenced the definition of "unit" from the Condominium Ownership Act, Wis. Stat. § 703.02(15), and *Aluminum Industries Corp. v. Camelot Trails Condominium Corp.*, 194 Wis. 2d 574, 535 N.W.2d 74 (Ct. App. 1995), which interpreted that definition. The circuit court also reviewed the definition of "unit" in the condominium

declarations and concluded that "[t]hese definitions clearly and unequivocally state that the land under each of the condominium units is a common area and not part of that unit. Because the lands constitute a common element they belong to the associations and other unit owners on a percentage basis."

¶ 30. The circuit court therefore determined that because "Saddle Ridge is not the actual or beneficial owner of the forty-one parcels it is not subject to taxation thereon." The circuit court commented that "even though Saddle Ridge provided no estimate of value before the board, failure to do so does not invalidate the petition because Saddle Ridge is not the proper party to be assessed."

¶ 31. The Town appealed. The court of appeals was sharply divided. The majority affirmed the order of the circuit court. The majority opinion analyzed the assessment in terms of "vacant land reserved for development within a partially developed condominium project." The majority opinion expressly stated that "we do not address the issue of whether a municipality may assess a condominium developer for the development value of . . . a declared but unbuilt unit."[12]

¶ 32. The majority opinion also rejected the Town's position of applying a "beneficial ownership" test, stating that "imposing a common law test of ownership for tax assessment purposes would be inappropriate in the condominium context because the legislature has adopted a comprehensive statutory scheme that addresses condominium ownership rights . . . . [T]his scheme explicitly

[12] *Saddle Ridge Corp. v. Bd. of Review for Town of Pacific*, No. 2007AP2886, unpublished slip op., ¶ 21 n.10 (Wis. Ct. App. Aug. 27, 2009).

provides that ownership of the type of property at issue here . . . is determined under the terms of the declaration . . . ."[13]

¶ 33. Judge Dykman dissented, arguing that the majority opinion erred by analyzing the "vacant land" and that "[i]n reality, the assessment was for forty-one 'units' that Saddle Ridge owned."[14] He proclaimed that as a consequence, "[i]f the majority is correct, Saddle Ridge has found the Holy Grail of real estate taxation. Not only can Saddle Ridge transfer its real estate taxes to others, it can avoid property taxes entirely, from the time it or any landowner forms a condominium until the time the first structure is built . . . ."[15]

¶ 34. Judge Dykman agreed that "[t]here is no dispute that all of the land or dirt in Saddle Ridge's condominiums" is part of the common elements of the condominium, rather than being condominium "units."[16] He concluded, however, that this characterization "does not change the fact that the declared but unbuilt units are also 'units,' with corresponding interests in the common elements. . . . Saddle Ridge has not addressed the real issue—whether its declared but unbuilt units establish parcels subject to taxation. I have concluded that they do."[17]

¶ 35. We are generally in agreement with Judge Dykman's analysis and reverse the decision of the court of appeals.[18]

---

[13] *Id.*, ¶ 10.

[14] *Id.*, ¶ 24 (Dykman, J., dissenting).

[15] *Id.*, ¶ 23 (Dykman, J., dissenting).

[16] *Id.*, ¶ 35 (Dykman, J., dissenting)

[17] *Id.*, ¶ 42 (Dykman, J., dissenting).

[18] We also note that in its brief and argument here, Saddle Ridge has abandoned the "double taxation" argument raised before the Board of Review and the court of appeals. In any

# III

■

¶ 36. Certiorari review under Wis. Stat. § 70.47(13) is limited to a review of the record made before the board of review. The court does not conduct its own factual inquiry and may not admit any new evidence.[19]

■

¶ 37. On certiorari, the court is limited to considering four factors:

(1) whether the Board acted within its jurisdiction;

(2) whether the Board acted according to law;

(3) whether the Board's action was arbitrary, oppressive, or unreasonable, representing its will rather than its judgment; and

---

event the argument is not supported. No documentation of the taxation of other unit owners is in the record to establish whether more than one party has been taxed for the value of the parcels in dispute here. As Judge Dykman observed in his dissent at the court of appeals, even if there had been such a double taxation, it was to the detriment of the other unit owners, not to Saddle Ridge:

> Saddle Ridge does not have standing to complain about the assessments of units it doesn't own. Saddle Ridge could complain that its pro-rata share of the common elements is excessive because the common elements were too highly assessed. But it doesn't make that assertion. Saddle Ridge can complain about the valuation of its parcels, an issue I address later, but I have concluded that its declared but unbuilt units establish parcels subject to assessment and taxation. If there was any double taxation, it did not affect Saddle Ridge.

*Saddle Ridge Corp. v. Bd. of Review for Town of Pacific*, No. 2007AP2886, unpublished slip op., ¶ 43 (Wis. Ct. App. Aug. 27, 2009) (Dykman, J., dissenting).

[19] *Nankin v. Village of Shorewood*, 2001 WI 92, ¶ 20, 245 Wis. 2d 86, 630 N.W.2d 141.

(4) whether the evidence was such that the board might reasonably make the order or determination in question.[20]

¶ 38. Review in the instant case falls under the second factor: Did the Board act according to law?

¶ 39. With regard to the first factor, the Board acted within its jurisdiction. No one asserts otherwise.

¶ 40. With regard to the third factor, no allegation is made, and no evidence appears in the record, that the Board's action was arbitrary, oppressive, or unreasonable, representing its will rather than its judgment.

¶ 41. With regard to the fourth factor, an assessment "made in accordance with the statutory mandate must be upheld if it can be supported by any reasonable view of the evidence."[21] "The presumptions are all in favor of the rightful action of the board."[22]

¶ 42. Here, a reasonable view of the evidence before the Board supports the Board's determination of the assessment value. The assessor used comparable property, adjusting for differences between the comparable property and the unbuilt units assessed here. This method of valuation is well accepted. Saddle Ridge presented no evidence to support a lower assessment

[20] *Id.*

[21] *Id.,* ¶ 21.

[22] *Waste Mgmt. of Wis., Inc. v. Kenosha County Bd. of Review,* 184 Wis. 2d 541, 555, 516 N.W.2d 695 (1994).

The court will not make an assessment of the property. If it finds error that renders the assessment void, the court must set aside the assessment and remand to the Board for further proceedings. *Nankin,* 245 Wis. 2d 86, ¶ 21.

value. Based on the evidence before it, the Board reasonably determined to uphold the 2006 assessment value of each unit at $32,000.

## IV

■

¶ 43. We conclude that Saddle Ridge was lawfully assessed for the property tax due on the tax parcels at issue here. These parcels represent the declared but unbuilt units within the condominiums, and Saddle Ridge is the owner of those units.

¶ 44. Our analysis rests on the statutes. Much of the dispute has centered on the proper definition of "unit," which we analyze below. First we look briefly to Chapter 70 of the statutes, which authorizes and imposes the property tax.

¶ 45. Section 70.01 provides that "[t]axes shall be levied . . . upon all general property . . . ." The statutes then define "general property," which includes "all the taxable real and personal property defined in ss. 70.03 and 70.04 . . . ." Wis. Stat. § 70.02. Section 70.03 defines "real property" as follows:

> 70.03 Definition of real property. "Real property", "real estate" and "land", when used in chs. 70 to 76, 78 and 79, include not only the land itself but all buildings and improvements thereon, and all fixtures and rights and privileges appertaining thereto, except that for the purpose of time-share property, as defined in s. 707.02(32), real property does not include recurrent exclusive use and occupancy on a periodic basis or other rights, including, but not limited to, membership rights, vacation services and club memberships.

¶ 46. Saddle Ridge, however, does not make an argument under Wis. Stat. § 70.03 defining real prop-

erty.[23] Rather, it contends that the Condominium Ownership Act, read together with the terms of the condominium declarations, made the Town's assessment of the unbuilt parcels improper.

¶ 47. Saddle Ridge's principal argument is that the 41 parcels for which it was taxed were not "units" because there was no building and only built "units" could be taxed under the terms of the Condominium Ownership Act, read together with the declarations for these condominiums. Saddle Ridge argues that without buildings, the tax parcels here are only vacant land and that all of the land within the condominiums is part of the common elements, properly taxed to the owners of the built units.

¶ 48. "Units" within a condominium are indeed important in the analysis for assessment of property taxes. Wisconsin Stat. § 703.21(1) declares: "Every unit and its percentage of undivided interest in the common elements" is a separately taxable parcel. Furthermore, no part of the common elements "shall be deemed to be a parcel separate from the unit." Section 703.21(1) reads as follows:

> 703.21 Separate taxation. (1) Every unit and its percentage of undivided interest in the common elements shall be deemed to be a parcel and shall be subject to separate assessments and taxation by each assessing unit and special district for all types of taxes authorized by law including, but not limited to, special levies based on the value of property and special assessments. Neither the building, the property nor any of the

---

[23] The Town at one point in its brief asserts that regardless of who owns the land or units, Saddle Ridge owns significant rights of privileges, including the right to develop the declared units and to sell them. Because our analysis under the Condominium Ownership Act resolves this case, we do not address this undeveloped argument.

common elements shall be deemed to be a parcel separate from the unit.

¶ 49. To determine whether the tax parcels assessed here were taxed in compliance with Wis. Stat. § 703.21(1), we must determine whether each parcel taxed by the Town was in fact a unit and that "neither . . . the property nor any of the common elements" was taxed as a parcel separate from a unit.

¶ 50. Saddle Ridge's argument that there can be no unit without a building relies principally on the definition of "unit" contained within the three condominium declarations. The declarations contain virtually identical definitions of "unit." An individual unit is defined as "that part of a building" within the "the interior surfaces of the perimeter walls." The definition of "unit" in the declarations is as follows:

> Definition of Unit. A unit is that part of a building intended for individual, private use, comprised of one or more cubicles of air at one or more levels of space having outer boundaries formed by the interior surfaces of the perimeter walls, floors, ceilings, windows, window frames, doors and door frames of the units, including the basement area within a unit, as said boundaries are shown on the building and floor plans attached hereto . . . together with all fixtures and improvements therein contained.

¶ 51. More persuasively, the Town relies principally on the statutory definition of a "unit" contained in Wis. Stat. § 703.02(15). The statutory definition does not define "unit" in terms of a building. It defines "unit" as "a part of a condominium intended for any type of independent use." Wisconsin Stat. § 703.02(15) defines "unit" as follows:

> "Unit" means a part of a condominium intended for any type of independent use, including one or more cubicles

46

of air at one or more levels of space or one or more rooms or enclosed spaces located on one or more floors, or parts thereof, in a building. A unit may include 2 or more noncontiguous areas.

██

¶ 52. If a provision in the declaration conflicts with a statutory provision, the statutory provision is controlling. According to Wis. Stat. § 703.30(4), "[i]f there is any conflict between any provisions of any condominium instruments . . . and any provisions of this chapter, the provisions of this chapter shall control." Thus the statutory definition of "unit" trumps the definition in the condominium declarations.

¶ 53. Saddle Ridge argues that the latter part of the definition of "unit" in Wis. Stat. § 703.02(15) includes the phrase "in a building" and therefore that the statutory definition of "unit," like the declaration definition, also requires a building. This argument is not a persuasive or reasonable reading of the statute. The statutory phrase "in a building" appears in a clause of the definition introduced by the word "including" that gives non-exhaustive illustrations of a "unit."

¶ 54. Saddle Ridge also argues that the definition of "unit" in the declarations should be applied because the Wisconsin Property Assessment Manual advises that "the assessor should look at the condominium declaration" to "detail what are common elements and how these elements are allocated to each individual unit."[24]

---

[24] Bureau of Assessment Practices, Wis. Dep't of Revenue, *Wisconsin Property Assessment Manual* 8–51 (2009) (hereinafter *Manual*).

The statutes give authority to the Manual. Wisconsin Stat. § 73.03(2a) provides, in part, that it is a duty of the Department of Revenue to prepare and publish assessment manuals. Wisconsin Stat. § 70.32(1) provides, in part, that "[r]eal property

¶ 55. This argument is not persuasive. The Manual does not provide any reason why the definition of "unit" in the condominium declarations should trump the definition in the statute. The Manual's advice about what the assessor "should" do when determining how to assign value to a unit presupposes the existence of the unit.

¶ 56. The assessor looks to the tax rolls to determine the parcels that are to be valued. The Manual provides, "Each unit in a condominium must be listed in the real estate assessment roll . . . . Since a specific piece of land is generally not bought and sold with each condominium unit, it is generally not possible to have a legal description that describes a specific piece of land for each unit."[25]

¶ 57. The unbuilt units at issue here are in the real estate assessment roll with assigned tax parcel numbers. Although Saddle Ridge protests that the Town taxed the vacant land, which is part of the condominium's common elements, Judge Dykman's dissent at the court of appeals correctly observes that "[t]hat is just incorrect."[26] Rather,

shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual provided under s. 73.03(2a) . . . ."

[25] *Manual* at 8–50.

The Manual also contemplates that the condominium declaration itself may have value, irrespective of any physical construction. In describing the "Cost Approach" as one means to assess condominium property, the manual states that "the assessor should determine an appropriate amount for attorney fees, surveys, and other administrative expenses necessary to create individual ownership." *Manual* at 8–53.

[26] *Saddle Ridge Corp. v. Bd. of Review for Town of Pacific,* No. 2007AP2886, unpublished slip op., ¶ 24 (Wis. Ct. App. Aug. 27, 2009) (Dykman, J., dissenting).

48

the property tax assessment was not for 'vacant land' or, for that matter, any land at all. In the column titled 'Acres,' the forty-one units were each shown as containing 0.0000 acres of land. In reality, the assessment was for forty-one 'units' that Saddle Ridge owned . . . .[27]

¶ 58. The Board's treating these declared but unbuilt units as units for property tax purposes under Wis. Stat. §§ 703.02(15) and 703.21 is supported by *Aluminum Industries Corp. v Camelot Trails Condominium Corp.,* 194 Wis. 2d 574, 535 N.W.2d 74 (Ct. App. 1995). This case interprets Wis. Stat. § 703.02(15) and is discussed by both parties.

¶ 59. The question decided in *Aluminum Industries* was not whether owners of unbuilt condominium units were properly assessed for property taxes but whether "a condominium property on which no construction has taken place is a 'unit' subject to assessment for common expenses" assessed by the condominium association under Wis. Stat. § 703.16(2).[28] Section 703.16(2)(a) of the Condominium Ownership Act provides that these assessments are to be collected "against the unit owners in proportion to their percentage interests in the common elements *or as otherwise provided in the declaration*" (emphasis added).

¶ 60. In other words, the issue in *Aluminum Industries* was whether condominium property on which no construction had taken place constituted "units" for purposes of the statutory assessment for common expenses, not for purposes of property tax.[29]

---

[27] *Id.*

[28] *Aluminum Indus. Corp. v. Camelot Trails Condo. Corp.,* 194 Wis. 2d 574, 576–77, 535 N.W.2d 74 (Ct. App. 1995).

[29] According to the briefs in *Aluminum Industries,* the owner of the unbuilt condominium units paid property taxes on

The court of appeals examined the statute and concluded, "We read nothing in the definitions of 'unit owner'[30] or 'unit'[31] to suggest their limitation to constructed units . . . . Indeed, the statute explicitly refers to 'a part' that is 'intended for any type of independent use, including one or more cubicles of air.' Clearly and unambiguously . . . that definition includes condominium land intended for construction but on which construction has not been started or completed."[32]

¶ 61. The court in *Aluminum Industries* then examined the declaration and determined that it allocated assessments differently from the statute. Section 703.16(2) allowed the declaration to provide a different method of assessment than the statutes provided. Adhering to the provisions of the declaration, as allowed by Wis. Stat. § 703.16(2), the court of appeals relieved the owner of the unconstructed units of payment of assessments to the condominium association.

¶ 62. By contrast, however, the separate taxation provision in Wis. Stat. § 703.21 provides no such flexibility. Each unit and its percentage interest in the common elements is a tax parcel and is separately taxed. The declaration is not free to alter this "separate taxation" provision.

¶ 63. *Aluminum Industries* compels the conclusion that each "unit" identified in the condominium declaration is a "unit" for purposes of separate taxation

---

its unbuilt units, much as Saddle Ridge has paid taxes on the parcels at issue here for some years without objection.

[30] Wis. Stat. § 703.02(17).

[31] Wis. Stat. § 703.02(15).

[32] *Aluminum Indus.*, 194 Wis. 2d at 582–83.

50

under Wis. Stat. § 703.21, regardless of whether the unit has been constructed. We conclude, as did the court of appeals in *Aluminum Industries,* that for purposes of identifying the "unit" as defined in Wis. Stat. § 703.02(15), a unit may exist without a building.

¶ 64. In addition to these arguments, Saddle Ridge asserts that the unbuilt units do not meet the Condominium Act's definition of "property" as meaning "unimproved land, land together with improvements on it or improvements without the underlying land." Wis. Stat. § 703.02(14). Saddle Ridge argues that under this definition, only land and improvements qualify as "property," and that therefore only land and improvements, not unbuilt units, can be assessed for property tax.

¶ 65. We are not persuaded by this argument. Wisconsin Stat. § 703.04 provides that "[a] unit, together with its undivided interest in the common elements, for all purposes constitutes real property." We have concluded that the declared but unbuilt units are "units" within the meaning of chapter 703. Wisconsin Stat. § 703.04, declaring that a unit is real property "for all purposes," forecloses Saddle Ridge's argument that a unit is not property for purposes of property taxation.

¶ 66. Furthermore, Saddle Ridge's interpretation of "unit" is contrary to the Condominium Ownership Act, under which each unit owner bears the tax burden for his or her own undivided interest in the common elements of the condominium but no unit owner is required to pay more than his or her share.

¶ 67. As noted, Wis. Stat. § 703.21(1) makes each unit a separate tax parcel, together with its own "undivided interest in the common elements." Furthermore, Wis. Stat. § 703.13(1) requires that each unit's percentage interest in the common elements, must be "set forth

in the declaration." The effect is that each unit owner is responsible for his or her own share of the taxes but not more than that share.

¶ 68. Moreover, "[t]he percentage interests shall have a permanent character and . . . may not be changed without the written consent of all of the unit owners and their mortgagees." Wis. Stat. § 703.13(4). These requirement appear to have been met by the condominium instruments in this case, which establish that the percentage interest of the common elements owned by each unit is a fixed fraction. It does not (and can not) change over time without consent of the unit owners. In the Declaration for the Saddle Ridge Estates Condominium, for example, when there were 48 units declared in the original condominium instruments, each unit owner owned a 1/48 percentage interest in the common elements.[33]

¶ 69. Therefore, if Saddle Ridge does not pay the taxes assessed on the percentage share of each of the

---

[33] Here it appears from the record that each of the three condominiums has been expanded since the original declaration was filed and now includes a larger number of units than were originally declared. Wisconsin Stat. § 703.26 provides the conditions and requirements for expansion of a condominium, which are not at issue in this case.

Although the amendments to the declaration creating the expansion are not in the record, the parties do not dispute that the percentage ownership of the common elements in each condominium is a fixed fraction. Each unit owner of a declared unit owns a corresponding equal share of the common elements. Before the Board of Review, one of the representatives for Saddle Ridge explained as follows:

Gosda: At that present time when this was printed, there were 48 units in there. Now there's 132. We use the same division; divide 132 by one . . .

Man: Divide one by 132.

Gosda: Yes. I said that wrong.

52

declared but unbuilt units, then one of two things must happen: either no one pays the pro-rata share of taxes for that fraction of the common elements or the taxes for that portion of the common elements will be shifted to the unit owners of the already-built units.

¶ 70. The possibility that by clever use of definitions in a condominium declaration a developer could avoid paying taxes on a share of the common elements, or that the developer could avoid taxes altogether by never constructing a unit, is what prompted Judge Dykman to declare Saddle Ridge's interpretation of the law to be the "Holy Grail of real estate taxation." As Judge Dykman explained:

> One reason that declared but unbuilt units must be "units" that establish parcels subject to taxation is that the majority's result leads to this: When a condominium is "born" by recording a declaration and plat (as Saddle Ridge did), there is nothing to tax because until something gets built, no units exist. This is far from a speculative problem. [Saddle Ridge] explained that Saddle Ridge has "expandable areas" where there are no declared units. The record is unclear as to whether these areas are within or outside Saddle Ridge's three condominiums. . . . [T]hese areas could be used to expand one of Saddle Ridge's condominiums or to start a new condominium. Either way, if a declared but unbuilt unit does not establish a taxable parcel, the Town of Pacific will be unable to tax anything in these areas until something is built. If that time is, as Gosda explained, twelve to fifteen years away, Saddle Ridge will be able to avoid real estate taxes on those areas for that length of time.[34]

---

[34] *Saddle Ridge Corp. v. Bd. of Review for Town of Pacific*, No. 2007AP2886, unpublished slip op., ¶ 40 (Wis. Ct. App. Aug. 27, 2009) (Dykman, J., dissenting).

¶ 71. The other, equally unacceptable consequence of the position argued by Saddle Ridge and adopted by the court of appeals would be to shift the tax burden onto the purchasers of the earliest condominium units to be built and away from the developer. If only built units pay taxes on the common elements, then no taxes would be due until the first unit is built. Thereafter, all of the tax liability for the common elements would shift onto the first unit owner to purchase a built unit; when the second unit was built, the two unit owners would each pay half of the taxes for all of the common elements, while the developer continued to pay nothing. As more units were built and purchased, the tax burden on the common elements would be continually recalculated.

¶ 72. This result would violate the separate taxation requirement in Wis. Stat. § 703.21 by forcing the early unit owners to pay the taxes for the common elements. It would also run counter to the requirement that the percentage interest in the common elements (and therefore the resulting tax responsibility of each unit owner for the common elements) must be "permanent in character," because the unit owners' tax responsibilities would continue to shift as more units were constructed. Wis. Stat. § 703.13(4).

¶ 73. Finally, we note that adopting Saddle Ridge's position that "units" do not exist until they are built would create uncertainty and administrative difficulties. Under Saddle Ridge's position, every condominium could contest and manipulate the exact moment at which a condominium unit is "born." This interpretation would encourage needless litigation over the questions of when and whether a "unit" begins to exist for tax and other purposes and would permit gamesmanship.

¶ 74. In effect, Saddle Ridge would have us apply one meaning of the statutory word "unit" to conclude it

has met its obligations in creating the condominiums, but then would shuffle the deck to apply another definition of "unit"—one which the developer itself supplies—when the tax bill comes due. The statute does not allow such reshuffling of critical terms.

¶ 75. Under chapter 703, the declared units must come into legal existence when the condominium instruments are recorded. The declaration must identify each unit in the condominium,[35] and "[e]very unit shall be designated on the condominium plat by the unit number."[36] Thus the condominium itself cannot exist if its units are not declared and described. Neither the legal existence of the units nor their assessment value simply disappears until such time as construction is completed.

¶ 76. For the reasons set forth, we conclude that the Board "acted according to law" in assessing Saddle Ridge for the unbuilt units. Saddle Ridge owns the declared but unbuilt condominium units and these unbuilt units are tax parcels, the assessment value of which is assessed to Saddle Ridge. Accordingly, we reverse the decision of the court of appeals, which affirmed the order of the circuit court. The Board of Review for the Town of Pacific got it right. Saddle Ridge's petition for a writ of certiorari should have been denied by the circuit court.

*By the Court.*—The decision of the court of appeals is reversed.

[35] Wisconsin Stat. § 703.09(1)(c) provides that "[a] condominium declaration shall contain . . . . A general description of each unit, including its perimeters, location and any other data sufficient to identify it with reasonable certainty."

[36] Wis. Stat. § 703.11(3).