# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2017AP516 |
| COMPLETE TITLE: | State of Wisconsin ex rel. The Peter Odgen Family Trust of 2008 and The Therese A. Mahoney-Ogden Family Trust of 2008, Petitioners-Appellants, v. Board of Review for the Town of Delafield, Respondent-Respondent-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 381 Wis. 2d 161,911 N.W.2d 653
PDC No: 2018 WI APP 26

| | |
|---|---|
| OPINION FILED: | March 14, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | November 5, 2018 |

| SOURCE OF APPEAL: | |
|---|---|
| COURT: | Circuit |
| COUNTY: | Waukesha |
| JUDGE: | Kathryn W. Foster |

| JUSTICES: | |
|---|---|
| CONCURRED: | DALLET, J. concurs, joined by A.W. BRADLEY, J. (opinion filed). |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the respondent-respondent-petitioner, there were briefs filed by *R. Valjon Anderson*, and *Municipal Law & Litigation Group, S.C.*, Waukesha. There was an oral argument by *R. Valjon Anderson*.

For the petitioners-appellants, there was a brief filed by *Paul W. Zimmer*, and *O'Neil, Cannon, Hollman, DeJong & Laing S.C.*, Milwaukee. There was an oral argument by *Paul W. Zimmer*.

An amicus curiae brief was filed on behalf of Wisconsin Realtors Association, Wisconsin Builders Association, and NAIOP-WI by *Thomas D. Larson*, Madison.

An amicus curia brief was filed on behalf of Wisconsin Farm Bureau Federation, Cooperative and Waukesha County Farm Bureau by *H. Dale Peterson*, *John H Laubmeier*, and *Stroud, Willink & Howard, LLC*, Madison.

2019 WI 23

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2017AP516

(L.C. No. 2016CV1707)

STATE OF WISCONSIN      :      IN SUPREME COURT

**State of Wisconsin ex rel. The Peter Odgen Family Trust of 2008 and The Therese A. Mahoney-Ogden Family Trust of 2008,**

    **Petitioners-Appellants,**

**FILED**

    **v.**

**MAR 14, 2019**

**Board of Review for the Town of Delafield,**

    **Respondent-Respondent-Petitioner.**

Sheila T. Reiff
Clerk of Supreme Court

REVIEW of a decision of the Court of Appeals. *Affirmed and cause remanded.*

¶1 SHIRLEY S. ABRAHAMSON, J. In 2016, the Board of Review for the Town of Delafield reclassified two lots of land owned by The Peter Ogden Family Trust of 2008 and The Therese A. Mahoney-Ogden Family Trust of 2008 from "agricultural land" to "residential." This reclassification resulted in a significant increase in property tax owed for the two lots. The Board

believed that to qualify for the "agricultural land" classification, the land must be farmed for a business purpose.[1]

¶2 The Ogdens sought certiorari review, and the Circuit Court for Waukesha County, Kathryn W. Foster, Judge, sustained the Board's reclassification of the land as "residential."

¶3 The court of appeals reversed the circuit court, holding that a business purpose was not necessary for land to be classified as "agricultural land" for property tax purposes.[2] "Because the assessor's determination of the appropriate classification was driven by his erroneous understanding of the law[,]" the court of appeals ordered the circuit court to remand the cause to the Board to "assess the Trust property anew in a manner that is not inconsistent with" the court of appeals' decision.[3]

¶4 We affirm the decision of the court of appeals.

¶5 We agree with the court of appeals that a business purpose is not required in order for land to be classified as "agricultural land" for property tax purposes.

---

[1] The Board members reached a tie vote with regard to whether the Assessor's reclassification should be overturned or sustained, and as a result, the reclassification stood.

[2] State ex rel. Peter Ogden Family Trust of 2008 v. Bd. of Review, 2018 WI App 26, 381 Wis. 2d 161, 911 N.W.2d 653.

[3] Id., ¶25.

2

¶6 Based on the undisputed evidence presented to the Board,[4] the two lots at issue are entitled to be classified as "agricultural land" as a matter of law.

¶7 Accordingly, we remand the cause to the Board for the limited purpose of affixing a value to the two lots that we conclude are entitled to be classified as "agricultural land."

I

¶8 The Ogdens own three adjacent lots of land in the Town of Delafield. Only two of those lots are at issue in the instant case.[5] The smaller of the two lots is 4.6 acres, and the larger of the two is 7.76 acres.

¶9 From 2012 through 2015, the two lots were classified as "agricultural land" and "agricultural forest land."[6] When the

---

[4] Neither party asks this court to remand the cause to the Board to re-determine whether the proper classification is "residential" or "agricultural land." The Board argues that we should classify the two lots as "residential" as a matter of law, while the Ogdens argue that we should classify the two lots as "agricultural land" as a matter of law.

We agree with the parties that based on the record in the instant case, the appropriate classification of the two lots may be determined as a matter of law.

[5] The third lot contains the Ogdens' residence, and the Ogdens do not dispute this lot's classification as "residential."

[6] Much of the smaller lot and a portion of the larger lot contain untillable forest land. From 2012 to 2015, during which time the portions of the lots being farmed by the Ogden's were classified as "agricultural land," the wooded portions of the lots were classified as "agricultural forest land."

(continued)

3

two lots were classified as "agricultural land" in 2015, the assessed value of the lots was $17,100.  In 2016, however, tax assessor Judson Schultz reclassified the two lots as "residential."  When classified as "residential," the assessed value of the lots jumped to $886,000.  Thus, the reclassification of the two lots from "agricultural land" to "residential" resulted in a significant increase in property tax owed by the Ogdens for the two lots.  The Ogdens filed an objection to the Assessor's reclassification with the Board, and an evidentiary hearing was held.

¶10 At the hearing, the Ogdens maintained that the two lots should continue to be classified as "agricultural land." Peter Ogden testified that the two lots were primarily used to harvest apples and hay for food and fiber and to grow Christmas trees.  He explained that he grew apple trees on approximately one acre of the smaller lot.  On the larger lot, Mr. Ogden testified that he grew Christmas trees on approximately four to five acres.  He testified that the larger lot also contains a three-acre hayfield.  Mr. Ogden testified that a barn was built

---

The parties agree that if the relevant portions of both lots are classified as "agricultural land," then the wooded portions would necessarily be classified as "agricultural forest land," but if the relevant portions are classified as "residential," then the wooded portions would not be classified as "agricultural forest land."  <u>See</u> Wis. Stat. § 70.32(2)(c)1d.a.

We agree with the parties, and therefore, we do not further discuss the issue.

4

on the smaller lot and presented a Certified Survey Map that showed a second proposed barn on the larger lot. Mr. Ogden concluded his testimony as follows:

> In conclusion, growing apple trees, Christmas trees and alfalfa, which is what I am doing on these two pieces of land, should all be considered an agricultural use as long as that is the primary use of that land. As long as that is the primary use of that land. That is the primary use of that land.

¶11 Mr. Ogden presented aerial photographs of the two lots that showed the progression of the lots dating back to 2005. The 2013 picture shows a green hayfield, and the 2015 picture shows lines in the hayfield from when the hay was harvested. Mr. Ogden also presented ground photographs of the two lots. The pictures show apple trees and Christmas trees, each planted in orderly rows and individually staked out.[7] The ground photographs also included several photographs of the pre- and post-harvest hayfield. Mr. Ogden further presented over 100 pages of expense reports, invoices, receipts, equipment rental agreements, and checks showing the Ogdens' farming expenses for the years 2011 through 2016.[8]

---

[7] Therese Mahoney-Ogden testified that she and her husband staked out the trees because the Assessor told them to do so when he first classified the two lots as "agricultural land" in 2012.

[8] While some of this documentation includes services performed on the Ogdens' residential lot, most of the documentation was for services performed on the two lots at issue.

5

¶12 The Ogdens called a local farmer, Lloyd Williams, as a witness. Mr. Williams testified that he and Mr. Ogden have "farmed [the lots] since 2012. We have plowed it. We tilled it. . . . And if Mr. Ogden gets cattle some day, we will hopefully work out a shared agreement where we can continue to do this in the future." Mr. Williams testified on cross-examination that he "[a]bsolutely, without a doubt" planted hay in the Ogden's hayfield. He elaborated that the Ogden's land had "extremely good soil" and that the Ogdens "fertilize it properly." Mr. Williams explained that the three-acre hayfield "produces 150 bales per acre," totaling approximately 450 bales of hay from the entire field. Mr. Williams also reaffirmed statements he made in a letter to Mr. Ogden dated three days before the hearing. The letter was admitted into evidence at the hearing and stated: "In 2012, we seeded alfalfa and brome grass and used it for cattle feed. We have established a beautiful hay field that we have continually harvested every year. We will again be harvesting the hay crop in 2016 . . . ."

¶13 The Assessor also testified before the Board. The Assessor explained the basis for his determination that the two lots were no longer entitled to the "agricultural land" classification:

> Now, the issue is that the Ogdens may say well, they
> have a tree orchard and they are doing it for ag use.
> I can't really substantiate . . . whether [Ms.
> Mahoney-Ogden] is doing it for personal or she is
> doing it for actual agricultural economic benefit, I
> can't determine that. And that is why I am seeking
> and have asked for all of this documentation because——

6

and the same goes for the trees, the Christmas tree farm.

. . . .

Now, I am, okay, looking at this and going, okay, does the property taxpayer carry on an activity like a business. Because that is what ag use is about. Ag use is really for farmers; right? It is about farming.

And so, given that the physical evidence for me was difficult to substantiate[9], I went to documentation. And I mean, if you are going to be in ag use, I think you should be held to the same standards as the farmers are held to. And I am sure that [Mr. Williams] files . . . a Schedule F profit and loss. And I mean if I were running a business, I would.

. . . .

[T]here should be a relationship between [Mr. Ogden and Mr. Williams] because they're [sic] supposed to be a transaction going on, per the contract. So, there is just a bad feeling that I got. You know, this is actually being done because there is no doubt, okay, there is a significant tax benefit that is going on for [the Ogdens] to be able to get the ag use. . . . I guess I was just looking for things to be much more clear-cut, everything flowing through because [Mr. Ogden] had set up this tree farm account. . . . I went through and I looked at the receipts and I tabulated the number of trees that the receipts were in there for. And I mean, again, and if you are doing ag use, you're doing this to generate an income. . . . Well, if you are going to be in ag use, you're going to be in business and you better be on top of it. I have my

---

[9] The Assessor had previously testified that it may sometimes be difficult to obtain physical evidence of agricultural use because "when you have a pasture and somebody cuts it, unless I am there, okay, to actually see it, I really have a difficult time finding the physical evidence."

Although the Ogdens invited the Assessor to view the two lots, the Assessor declined to do so.

own business. . . . I expected as a business person as somebody in ag use to be on top of it.

. . . .

And when I looked at the documentation, I just did not get a good feeling. Me professionally that if somebody looked behind me that they would look at this and they would question whether this tree farm was being done actually for agricultural reasons, to generate a profit for business, or was it being done to obtain significant property tax savings.

. . . .

You know, unfortunately, the ag use program you would think it was really developed for the farmers. In reality there are so many loop holes that people can take advantage. If you truly knew what went on, you would shake your head. . . . And I have called into question things that, I guess, I felt professionally that I was obligated to do. With that, in summary, I just am going to go back to ag use is for farmers. Ag use is for business. Okay. If you want to get into it, okay, then you need to show that you are going to actually be doing a business. . . . So, all things to me just do not seem to be a business. It seems to be an effort to make it look like a business.

. . . .

And I am——I want to make sure that if somebody looks behind me, that I am coming up with the right judgment on a situation. And I gave the, you know, Ogden the benefit of the doubt because I let them in the ag program. And understand somebody chooses to be in the ag program. I don't force anybody. That is their choice. I inform them of the consequences. I inform them especially if they are taking residential land and putting it in ag use that I am going to watch you closely because I know what the significant tax benefits are. You dot your T's, you cross your things, there is nothing that I can do. Developers do it all of the time. Okay. Farmers do it all of the time with residential land for individuals. And there is nothing that I can do as long as they do it correctly. The Ogdens simply didn't do it correctly. I am calling them. I can't again dispute that they

have planting [sic] things, but I do not think it's for ag use. I do not think it's for business reasons.

¶14 On cross-examination, the Assessor admitted that he knew there were individually "staked out" apple and Christmas trees planted "in clean rows" on the two lots. Nonetheless, after doing some "soul searching," the Assessor concluded that he did "not believe based on the documentation . . . that this is ag use land."

¶15 In sum, the Assessor believed that he could not conclusively determine whether the two lots were devoted primarily to agricultural use based on physical evidence of farming. He then asked the Ogdens for documentation that might support an "agricultural land" classification for the two lots, but because the documentation, in his view, did not sufficiently show that the Ogdens "carr[ied] on [the] activity like a business," the Assessor concluded that the two lots were not entitled to be classified as "agricultural land."

¶16 During deliberations, Board member Edward Kranick expressed that he had

> [not] seen where it's necessary to really have a business in all of these exhibits and in the guide for the board of review. I have just seen that it's a use, that it has to be devoted primarily to agricultural use, and that it's being used in a way for agricultural use.
>
> . . . .
>
> [T]here is——Christmas——there are trees that are planted in a systemic [sic] way that appears to be in the use to be used eventually once they mature to be farmed and that the [hay is] being taken off and that there are orchards. That is what I am hearing. If I

9

am not hearing that or if that is not what other people are hearing, please correct me or enlighten me.

¶17 The chairman of the Board, Paul Kanter, engaged in the following exchange with counsel for the Board:

[Kanter]: As to farming, you would agree that it's [sic] intent here is to protect a business concern, not horticulture as our ordinance defines horticulture . . . .

[Counsel]: There does need——Actually in the assessor's manual it makes [a] distinction between gardens and actual crop production. There does have to be some kind of a commercial interest in order for it to be separate from a personal garden where you're using it yourself. You need to have some interest in actually selling the product.

¶18 Board member Larry Krause stated that, in his view, the two lots do "meet the definition, very loose definition, of agricultural land." But, Mr. Krause added that "we are bound to take the word of our assessor. . . . He has the final word."

¶19 Board member Billy Cooley expressed concern that the Ogdens had "planted bird houses" in the hayfield resulting in a slightly decreased hay yield.[10] Mr. Cooley characterized the two lots as a "gentleman's farm" befitting a horticulturalist, as opposed to a "farming operation."

¶20 The Board's vote on whether to sustain the Assessor's reclassification of the two lots resulted in a tie: Mr. Kanter and Mr. Kranick voted against sustaining the Assessor's reclassification of the two lots as "residential," while Mr.

---

[10] Mr. Ogden testified that he installed birdhouses "around" the hayfield, meaning around its perimeter, not in the middle of it.

Cooley and Mr. Krause voted in favor of sustaining the Assessor's reclassification. Because of the tie vote, the Assessor's decision to reclassify the two lots as "residential" was sustained.

¶21 The Ogdens petitioned the Waukesha County Circuit Court for certiorari review of the Board's decision. The circuit court concluded that the two lots did not "pass the eye test," and dismissed the Ogdens' petition.

¶22 The Ogdens appealed, and the court of appeals reversed. The court of appeals concluded that a business purpose was not necessary for land to be classified as "agricultural land" for property tax purposes. The court of appeals further concluded that because the assessor's determination of the appropriate classification was driven by his erroneous understanding of the law, the proper disposition was to order the circuit court to remand the cause to the Board in order to "assess the Trust property anew in a manner that is not inconsistent with" the court of appeals' decision.[11]

II

¶23 The instant case arrives at this court for certiorari review pursuant to Wis. Stat. § 70.47(13) (2015-16).[12] In certiorari review under § 70.47(13), "we review the Board of Review's decisions, not the decisions of the circuit court or

---

[11] Ogden Family Trust, 381 Wis. 2d 161, ¶25.

[12] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

court of appeals, although we benefit from their analyses."[13] We are confined to "the record made before the board of review,"[14] and our review is limited to deciding "whether the board's actions were (1) within its jurisdiction; (2) according to law; (3) arbitrary, oppressive, or unreasonable and represented its will and not its judgment; and (4) supported by evidence such that the board might reasonably make the order or determination in question."[15]

¶24 Review in the instant case falls under the second factor: the Ogdens claim that the Board did not act according to law because it based its decision on the erroneous belief that a business purpose was required in order for land to be classified as "agricultural land" for property tax purposes. Whether the Board acted according to law is a question of law that we decide independently.[16] Resolving this question requires the interpretation of our statutes and administrative rules,

---

[13] Thoma v. Village of Slinger, 2018 WI 45, ¶10, 381 Wis. 2d 311, 912 N.W.2d 56; see also Sausen v. Town of Black Creed Bd. of Review, 2014 WI 9, 352 Wis. 2d 576, 843 N.W.2d 39.

[14] Saddle Ridge Corp. v. Bd. of Review, 2010 WI 47, ¶36, 325 Wis. 2d 29, 784 N.W.2d 527.

[15] Sausen, 352 Wis. 2d 576, ¶6 (footnote omitted).

[16] Steenberg v. Town of Oakfield, 167 Wis. 2d 566, 571, 482 N.W.2d 326 (1992); Lloyd v. Bd. of Review, 179 Wis. 2d 33, 36, 505 N.W.2d 465 (Ct. App. 1993).

which is also a matter of law that we decide independently of the Board of Review, circuit court, and court of appeals.[17]

III

¶25 We conclude that when it based its decision on an erroneous belief that a business purpose was required in order for land to be classified as "agricultural land" for property tax purposes, the Board did not act according to law.

¶26 Our analysis rests on the plain language of the applicable statutes and administrative rules.

¶27 Our procedures for interpreting statutes are familiar, and they are equally applicable to the interpretation of administrative rules.[18] "We begin with the statute's language because we assume that the legislature's intent is expressed in the words it used."[19] "Statutory language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning."[20] If the statutory language yields a plain meaning, "we ordinarily stop the inquiry."[21]

---

[17] Orion Flight Servs., Inc. v. Basler Flight Serv., 2006 WI 51, ¶¶16-18, 290 Wis. 2d 421, 714 N.W.2d 130.

[18] Id., ¶18; see also Wis. Stat. § 227.27(1).

[19] State v. Reed, 2005 WI 53, ¶13, 280 Wis. 2d 68, 695 N.W.2d 315; see also State ex rel. Kalal v. Circuit Ct., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110.

[20] Kalal, 271 Wis. 2d 633, ¶45.

[21] Id.

¶28 The Ogdens claim that the two lots are entitled to be classified as "agricultural land." Wisconsin Stat. § 70.32(2)(c)1g. defines "[a]gricultural land" as "land, exclusive of buildings and improvements and the land necessary for their location and convenience, that is devoted primarily to agricultural use."[22]

¶29 The statute further defines the term "agricultural use" to mean "agricultural use as defined by the [D]epartment of [R]evenue by rule and includes the growing of short rotation woody crops, including poplars and willows, using agronomic practices."[23]

¶30 The Department of Revenue, by rule, defines "agricultural use" to include both "[a]ctivities included in subsector 111 Crop Production, set forth in the North American Industry Classification System (NAICS),"[24] and "[g]rowing Christmas trees or ginseng."[25] "Activities included in subsector

---

[22] Wis. Stat. § 70.32(2)(c)1g. (emphasis added).

[23] Wis. Stat. § 70.32(2)(c)1i. (emphasis added).

[24] Wis. Admin. Code DOR § Tax 18.05(1)(a) (June 2015) (emphasis added).

[25] Wis. Admin. Code DOR § Tax 18.05(1)(c) (June 2015) (emphasis added).

111 Crop Production," include "<u>growing apples</u>" and "<u>growing hay</u>."[26]

¶31 As the court of appeals correctly emphasized, it is of great import that the relevant statutes and administrative rules refer to "growing" the relevant crops——here, Christmas trees, apples, and hay——not marketing, selling, or profiting from them.[27]

¶32 A business purpose is not required in order for land to be classified as "agricultural land" for property tax purposes. No statute, administrative rule, or case law supports a business purpose requirement for the "agricultural land" property tax classification.[28] To require a business purpose for land to be classified as "agricultural land" for property tax purposes would require the court to impermissibly insert such a

---

[26] Office of Mgmt. & Budget, Exec. Office of the President, <u>North American Industry Classification System (NAICS), United States, 1997</u>, at 86, 90 (emphasis added), https://www.census.gov/eos/www/naics/2017NAICS/2017_NAICS_Manual.pdf.

[27] <u>Ogden Family Trust</u>, 381 Wis. 2d 161, ¶6.

[28] Indeed, the Board appears to have largely abandoned its position that a business purpose is required in order for land to be classified as "agricultural land."

The Board does make an undeveloped argument related to estoppel that it raised for the first time before this court. "As a general rule, we will not consider for the first time on appeal an issue not raised in the circuit court, particularly when, as here, the issue is undeveloped . . . ." <u>The Lamar Co., LLC v. Country Side Rest., Inc.</u>, 2012 WI 46, ¶31 n.15, 340 Wis. 2d 335, 814 N.W.2d 159. We decline to address the Board's undeveloped argument.

limitation into a clear and unambiguous set of statutory provisions and administrative rules.[29]

¶33 The plain language of the applicable statutes and rules produces a clear and unambiguous meaning. If the land is devoted primarily to "agricultural use" as defined by our statutes and rules, that use need not be carried out for a business purpose in order for the land to qualify as "agricultural land" for property tax purposes.

IV

¶34 Ordinarily, if the court "finds any error in the proceedings of the board which renders the assessment or the proceedings void, it shall remand the assessment to the board for further proceedings in accordance with the court's determination . . . ."[30]

¶35 Neither party urges this court to remand the cause to the Board to re-determine the proper classification of the two lots.

¶36 The evidentiary record before the Board conclusively shows that the two lots are "devoted primarily to agricultural use," and thus, are entitled to be classified as "agricultural land."

---

[29] See Lincoln Sav. Bank, S.A. v. DOR, 215 Wis. 2d 430, 446, 573 N.W.2d 522 (1998).

[30] Wis. Stat. § 70.47(13); Saddle Ridge, 325 Wis. 2d 29, ¶41 n.22; see also Nankin v. Village of Shorewood, 2001 WI 92, ¶21, 245 Wis. 2d 86, 630 N.W.2d 141.

¶37 The phrase "[l]and devoted primarily to agricultural use" is defined by applicable provisions of the tax code. These provisions of the tax code apply in the instant case because they "provide definitions and procedures" used by "municipal assessors to classify certain real property as agricultural . . . ."[31]

¶38 The tax code, Wis. Admin. Code DOR § Tax 18.05(4), defines "[l]and devoted primarily to agricultural use" to mean "land in an agricultural use for the production season of the prior year, and not in a use that is incompatible with agricultural use on January 1 of the assessment year."[32]

¶39 Thus, a lot will constitute "land devoted primarily to agricultural use" if, during the applicable time period, the lot is primarily, that is, chiefly, put towards agricultural use.

¶40 In the instant case, the applicable "agricultural use" to which the land is put is the growing of Christmas trees, apples, and hay.[33]

¶41 Thus, the question presented is whether, during the production season of 2015, the two lots were chiefly put towards the growing of Christmas trees, apples, and hay; and whether, on January 1, 2016, the two lots were put towards a use that was

---

[31] Wis. Admin. Code DOR § Tax 18.04 (June 2015).

[32] Wis. Admin. Code DOR § Tax 18.05(4) (June 2015).

[33] See Wis. Admin. Code DOR §§ Tax 18.05(1)(a) & (1)(c) (June 2015); NAICS Manual, supra note 26, at 86, 90.

17

not incompatible with the growing of Christmas trees, apples, and hay.

¶42 The evidentiary record confirms that the Ogdens met their burden of proving that the Assessor's reclassification of the two lots as "residential" was erroneous.[34] The record demonstrates that, during the production season of 2015, the two lots were chiefly put towards the growing of Christmas trees, apples, and hay, and on January 1, 2016, the two lots were not put towards a use that was incompatible with the growing of Christmas trees, apples, and hay.

¶43 As we detailed at length above,[35] the Ogdens maintain a barn and a one-acre apple orchard on the smaller of the two lots, the remainder of the lot consisting of untillable forest. The apples trees are individually staked out and planted in clean rows. The larger of the two lots contains a four- to five-acre Christmas tree farm and a three-acre hayfield. The Christmas trees, like the apple trees, are individually staked out and planted in clean rows. Mr. Williams testified at length that he and Mr. Ogden have consistently planted and harvested hay in the hayfield and planned to harvest the field again in 2016. Indeed, the Assessor admitted that he knew there were apple and Christmas trees growing on the property and that these trees were "staked out" "in clean rows."

---

[34] Thoma, 381 Wis. 2d 311, ¶10; see also Sausen, 352 Wis. 2d 576, ¶10.

[35] See supra ¶¶9-13 and accompanying footnotes.

¶44  The evidentiary record shows that the two lots are "devoted primarily to agricultural use."  Accordingly, we conclude as a matter of law that the lots are entitled to be classified as "agricultural land."  Remand for the purpose of re-determining the proper classification is unnecessary in the instant case.

¶45  However, the Board is tasked with affixing a value to the two lots.  For that limited purpose, we remand the cause to the Board.

V

¶46  We conclude that a business purpose is not required in order for land to be classified as "agricultural land" for property tax purposes.  So long as land is devoted primarily to "agricultural use" as defined by our statutes and rules, that use need not be carried out for a business purpose in order for the land to qualify as "agricultural land" for property tax purposes.

¶47  We further conclude that, under the circumstances of the instant case, the record conclusively demonstrates that the two lots at issue are entitled to be classified as "agricultural land."  Therefore, we remand the cause to the circuit court with instructions that the circuit court order the Board:  (1) to overturn the Assessor's assessment and classify the appropriate portions of the two lots as "agricultural land" and "agricultural forest land"; and (2) to affix a valuation to the two lots.

19

*By the Court.*—The decision of the court of appeals is affirmed and the cause is remanded to the circuit court.

¶48 REBECCA FRANK DALLET, J. *(concurring).* I agree with the majority that a business purpose is not required for land to be classified as "agricultural land" for property tax purposes and that the decision of the court of appeals should therefore be affirmed. I disagree, however, with the majority's conclusion that this court may classify the two lots at issue as "agricultural land" as a matter of law.

¶49 The statute governing this court's review of the instant case states, in relevant part:

> If the court on the appeal finds <u>any error</u> in the proceedings of the board which renders the assessment or the proceedings void, <u>it shall remand the assessment to the board for further proceedings</u> in accordance with the court's determination and retain jurisdiction of the matter until the board has determined an assessment in accordance with the court's order.

Wis. Stat. § 70.47(13) (emphasis added).

¶50 The statute is unambiguous. The majority determined, and I agree, that the Board of Review for the Town of Delafield acted in error because it based its decision on the belief that a business purpose was required in order to classify land as "agricultural land" for property tax purposes. Pursuant to Wis. Stat. § 70.47(13), the assessment is therefore void and must be remanded to the Board for a new assessment, including a redetermination of the appropriate classification for the two lots.

¶51 An assessment begins by properly classifying the land to be assessed. The assessment process, as described by the Wisconsin Property Assessment Manual, requires real property to

1

"first be classified by use and then be assigned a value."[1] "Classification" of property is therefore not separate from its "assessment." Instead, they are both part of the assessment process which, in this case, is now void.

¶52 If there was any doubt about the meaning of Wis. Stat. § 70.47(13), one need only look at our cases interpreting this statute. In Nankin v. Village of Shorewood, 2001 WI 92, ¶¶ 20-21, 245 Wis. 2d 86, 630 N.W.2d 141, this court stated:

> [T]he court may not conduct its own factual inquiry and may not admit any new evidence. . . . The court will not make an assessment of the property; instead, if it finds any error that renders the assessment void, the court must set aside the assessment and remand to the board for further proceedings. (Emphasis added.)

Further, in Waste Mgmt. of Wisconsin, Inc. v. Kenosha Cty. Bd. of Review, 184 Wis. 2d 541, 566, 516 N.W.2d 695 (1994), we emphasized that:

> A court's function is not to make an assessment of the real estate or to substitute its judgment for that of a board of review. Instead, a court's duty is to set aside a board of review's determination if it finds upon the undisputed evidence that the assessment was not established in accordance with [Wis. Stat. §] 70.32(1) . . . .

¶53 By declaring as a matter of law that the two lots are entitled to be classified as "agricultural land" for property tax purposes, the majority exceeds the statutorily limited

---

[1] 1 Wisconsin Property Assessment Manual (2015) at 1-10; see also Wis. Stat. § 70.32(1): "Real property shall be valued by the assessor in the manner specified in the Wisconsin property assessment manual . . . ."

2

judicial review procedures applicable to certiorari review. As we have previously declared: "[o]n certiorari review, a court does not retry the facts . . . ." Sausen v. Town of Black Creek Bd. of Review, 2014 WI 9, ¶ 46, 352 Wis. 2d 576, 843 N.W.2d 39. As noted by the court of appeals, the record below includes an abundance of testimony regarding whether apple trees, pine trees intended to serve as Christmas trees, and hay were in fact planted and growing on the Ogden's property. See State ex rel. Peter Ogden Family Trust of 2008 v. Board of Review for Town of Delafield, 2018 WI App 26, ¶ 25, 381 Wis. 2d 161, 911 N.W.2d 653. This court may not, as the Board and the Ogdens request, review the evidentiary record before the Board and substitute itself as the fact finder as to whether the land was "devoted primarily to agricultural use."[2] This is the job of the Board.

¶54 We have found an error in the Board's proceedings that voids the assessment. Accordingly, we are required to remand to the circuit court with instructions to remand to the Board to reassess the two lots anew, a process that includes both classification of property and assignment of a property's value.

¶55 For the foregoing reasons, I concur.

¶56 I am authorized to state that Justice ANN WALSH BRADLEY joins this concurrence.

---

[2] As noted by the majority, the Board and the Ogdens both ask the court to review the record and classify the two lots as a matter of law. Majority op., ¶ 6 n.4. The Board asks us to classify the two lots as "residential" while the Ogdens assert that we should classify the two lots as "agricultural land." Id.

3