DAVID T. PROSSER, J.
¶ 50. {concurring). I join the majority opinion but write separately to provide additional background and analysis for disputes about the classification of real property.
I
¶ 51. In this case, the taxpayer appeared before the Town of Black Creek Board of Review (the Board). He testified about his position, and he supported his position with "two maps: one issued by the Wisconsin Department of Natural Resources (DNR) and the other issued by the United States Department of the Interior Geological Survey." Majority op., ¶ 39. When the taxpayer did not prevail before the Board, he filed for certiorari review in the Outagamie County Circuit Court. See Wis. Stat. § 70.47(13). He lost in the circuit court and on appeal.
¶ 52. When a taxpayer appears before a board of review, the taxpayer should proffer all the evidence *596 available because he will ordinarily be limited to that evidence on certiorari review. If the taxpayer is able to gather additional evidence after the board of review— often with the assistance of an attorney — he should seek de novo review under Wis. Stat. § 74.37. De novo review will not shift the burden of proof from the taxpayer to the board, but it will permit the taxpayer to buttress his case with more and different evidence challenging the correctness of the board's decision, which is normally based on the assessor's determination.
¶ 53. In this case, the taxpayer did not dispute the assessor's revaluation of his property. Rather, the taxpayer contended that his property was improperly classified.[1]
¶ 54. In my view, the taxpayer would have been in a stronger position with the board if the assessor had reclassified the property and the resulting reclassification had produced a higher assessment. In that case, the taxpayer could at least point to the classification prior to the change to support his position. Here, it was the taxpayer, not the assessor, who was seeking to reclassify the property. Surely the taxpayer had the burden in these circumstances.
¶ 55. This court does not know when the taxpayer's property was first classified as "productive forest land" because that evidence was never offered. The record shows that the taxpayer acquired the property in 1977 with a farm, but it does not show how the property was classified over the ensuing decades. The taxpayer did not provide evidence of how his land had *597 changed, if at all, during his ownership.[2] For instance, did he plant trees on the property? Did he ever harvest trees from the property for "commercial forest products"? If he never harvested trees, was his failure to do so (1) because he did not want to harvest trees; (2) because the trees were of such poor quality that they could not produce "commercial forest products"; or (3) because the law would not allow him to harvest trees from land designated as wetlands? Detailed information on these matters might have helped or hurt the taxpayer's case, but the absence of detailed information did not help his case.
¶ 56. This justice would have liked to have had a better explanation of "low grade woods" than what was provided and evidence of whether the "low grade woods" —here "low grade cedar" — were capable of producing "commercial forest products." This justice would have liked to have known whether all ten acres of the taxpayer's property were designated "wetlands," as well as when they were so designated and by whom. Finally, this justice would have liked information on whether environmental law prevents the harvesting of trees from officially designated wetlands so that the forested land was not able to produce "commercial forest products." On certiorari review, of course, this court is not able to consider information that was not part of the record of proceedings before the Board.
¶ 57. In sum, the taxpayer failed to offer sufficient evidence to establish that his property required *598 reclassification. Because the Town of Black Creek (the Town) had classified similar property the same way, the taxpayer was effectively seeking a reclassification that could affect the classification of other property in the Town. The taxpayer should have realized that the Board would be disinclined to adopt the taxpayer's position on anything less than compelling evidence. The taxpayer did not provide such evidence.
II
¶ 58. Wisconsin Stat. § 70.32(2) establishes the procedure for the classification of property:
(2) The assessor, having fixed a value, shall enter the same opposite the proper tract or lot in the assessment roll, following the instruction prescribed therein.
(a) The assessor shall segregate into the following classes on the basis of use and set down separately in proper columns the values of the land, exclusive of improvements, and, except for subds. 5., 5m., and 6., the improvements in each class:
1. Residential.
2. Commercial.
3. Manufacturing.
4. Agricultural.
5. Undeveloped.
5m. Agricultural forest.
6. Productive forest land.
7. Other.
¶ 59. Paragraph (c) in Wis. Stat. § 70.32(2) lists definitions of "agricultural forest land," "agricultural land," "other," "productive forest land," "residential," and "undeveloped land."
*599 ¶ 60. For purposes of this case, the definitions of "agricultural forest land," "productive forest land," and "undeveloped land" are relevant:
Id. "Agricultural forest land" means land that is producing or is capable of producing commercial forest products, if the land satisfies any of the following conditions:
a. It is contiguous to a parcel that has been classified in whole as agricultural land under this subsection, if the contiguous parcel is owned by the same person that owns the land that is producing or is capable of producing commercial forest products. In this subdivision, "contiguous" includes separated only by a road.
b. It is located on a parcel that contains land that is classified as agricultural land in the property tax assessment on January 1, 2004, and on January 1 of the year of assessment.
c. It is located on a parcel at least 50 percent of which, by acreage, was converted to land that is classified as agricultural land in the property tax assessment on January 1, 2005, or thereafter.
2. "Productive forest land" means land that is producing or is capable of producing commercial forest products and is not otherwise classified under this subsection.
4. "Undeveloped land" means bog, marsh, lowland brush, uncultivated land zoned as shoreland under s. 59.692 and shown as a wetland on a final map under s. 23.32 or other nonproductive lands not otherwise classified under this subsection.
Wis. Stat. § 70.32(2)(c).
*600 ¶ 61. As noted above, the taxpayer did not offer any evidence of how the classification of his property had changed — if it had — since the property was acquired in 1977.
Ill
¶ 62. Wisconsin did not require assessors to classify property, in the manner described in Wis. Stat. § 70.32(2), until 1931. See § 2, ch. 427, Laws of 1931.
¶ 63. There were several reasons for the development of classifications at that time. First, Article VIII, § 1 of the Wisconsin Constitution — the so-called uniformity clause — was amended in 1927. This constitutional provision had read in part, "The rule of taxation shall be uniform, and taxes shall be levied upon such property as the legislature shall prescribe." Wis. Const, art. VIII, § 1 (amended 1927). The 1927 amendment changed this sentence to read, "The rule of taxation shall be uniform, and taxes shall be levied upon such property with such classifications as to forests and minerals, including or separate or severed from the land, as the legislature shall prescribe."[3]
*601 ¶ 64. Second, the legislature followed up the 1927 amendment by creating Chapter 77 of the statutes relating to forest crop lands. Ch. 454, Laws of 1927. The original law permitted the owner of a tract of land that was at least 160 acres to petition the "conservation commission" to designate the land as "forest crop land," "more useful for growing timber and other forest crops than for any other purpose." Wis. Stat. § 77.02(1) (1927). Approval of the petition by the commission subjected the property to certain "forestry" practices as well as substantial tax benefits. See generally Wis. Stat. ch. 77 (1927). The constitutional amendment contemplated that at least some forest land would be classified differently from other land,[4] but it did not require that all forest land be classified differently.
¶ 65. Third, the legislature was in the midst of giving municipalities extensive planning and zoning authority. See, for example, Wis. Stat. § 59.97 (1929), setting out the "zoning power" of counties, which read in part, "(1) The county board of any county may by ordinance regulate, restrict and determine the areas within which agriculture, forestry and recreation may *602 be conducted, the location of roads, schools, trades and industries, and the location of buildings designed for specified uses . . . ."[5] Zoning and the classification of property for taxation appear to overlap, even if that overlap may not be wholly consistent.
¶ 66. The 1931 legislature[6] repealed the existing Wis. Stat. § 70.32(2) and replaced it with the following:
(2) The assessor, having fixed a value, shall enter the same opposite the proper tract or lot in the assessment roll, following the instructions prescribed therein. In cities and villages, he shall segregate into the following classes on the basis of use and set down separately in proper columns the values of the land, exclusive of improvements, and the improvements in each class:
A. Residential,
B. Mercantile,
C. Manufacturing,
D. Agricultural.
In towns, he shall segregate into the following classes' on the basis of use and set down separately in proper columns the acreage and the value of the parts of land, exclusive of improvements, and the improvements which fall within each class:
D. Agricultural,
E. Marsh, cut-over, or waste,
F. Timber,
A. Residential, including also mercantile and manufacturing.
*603 Wis. Stat. § 70.32(2) (1931). The listed classes contained no statutory definitions.
¶ 67. Wisconsin Stat. § 70.32(2) remained intact until 1959, when the legislature amended § 70.32(2), relating to towns, to include the following classes of property in Wis. Stat. § 70.32(2)(b):
A. Residential,
B. Mercantile,
C. Manufacturing,
D. Agricultural,
E. Marsh, cut-over, or waste,
F. Timber.[7]
¶ 68. Chapter 213, Laws of 1963 changed the listing in § 70.32(2)(b) to read:
A. Residential,
B. Mercantile,
C. Manufacturing,
D. Agricultural,
E. Swamp, or waste,
F.l Productive forest land,
F.2 Nonproductive forest land.
¶ 69. Chapter 213 then added paragraph (c) containing several definitions:
70.32(2)(c) For the purpose of this subsection "swamp or waste" means bog, marsh, lowland brush or other nonproductive lands not otherwise classified un *604 der this subsection; "productive forest land" means land which is producing or is capable of producing commercial forest products and is not otherwise classified under this subsection; "nonproductive forest land" means land which because of soil or site conditions is not producing or is not capable of producing commercial forest products and which is not otherwise classified under this subsection.
§ 2, ch. 213, Laws of 1963.
¶ 70. In 1981 the legislature deleted "Nonproductive forest land" from § 70.32(2)(b) as well as its definition in (2) (c), so that "Swamp, or waste" and "Productive forest land" were the classifications that remained at the bottom of the list. §§ 1059-60, ch. 20, Laws of 1981. The deletion was not accompanied by any change in the definitions. "Swamp, or waste" continued to be defined, in part, as "other nonproductive lands not otherwise classified." Id.
¶ 71. In 1984 the legislature changed the word "mercantile" to "commercial," 1983 Wis. Act 275, § 15(8), explaining in a Note that " '[cjommercial[1] is more readily understood and clearly indicates that this classification includes all property devoted to business uses."
¶ 72. In 1986 the legislature modified the definitions in Wis. Stat. § 70.32(c), especially "Swampland or wasteland," which was defined to mean "bog, marsh, lowland brush, uncultivated land zoned as shoreland under s. 59.971 and shown as a wetland on a final map under s. 23.32 or other nonproductive lands not otherwise classified under this subsection." 1985 Wis. Act 153, § 12 (emphasis added).
¶ 73. In 1995 the legislature added "other" to the list. 1995 Wis. Act 27, § 3362d. However, "other" was not defined until 2002. 2001 Wis. Act 109, § 156d.
*605 ¶ 74. Finally, 2003 Wis. Act 33 created a new category in the listing, "Agricultural forest land," and it changed "Swampland or wasteland" to "Undeveloped land." See 2003 Wis. Act 33, §§ 1536h-1536i. The legislature created the following definition of "Agricultural forest land":
"Agricultural forest land" means land that is producing or is capable of producing commercial forest products and is included on a parcel that has been classified in part as agricultural land under this subsection or is contiguous to a parcel that has been classified in whole or in part as agricultural land under this subsection, if the contiguous parcel is owned by the same person that owns the land that is producing or is capable of producing commercial forest products. In this subdivision, "contiguous" includes separated only by a road.
2003 Wis. Act 33, § 1536h.
¶ 75. The underlined words were vetoed by the governor. However, 2003 Wis. Act 230 was devoted entirely to the definition of "agricultural forest land" and created the definition, quoted above in paragraph 60, that exists today. See Wis. Stat. § 70.32(2)(c)ld.
IV
¶ 76. In this case, the taxpayer had the burden of proving that his ten acres were not properly classified as "productive forest land." The obvious argument to be made was that even though the taxpayer's ten acres were forested, his land was not producing and was not capable of producing commercial forest products. If the taxpayer had succeeded with this argument, he could then have argued that his land was "undeveloped land," *606 defined in part as "other nonproductive lands not otherwise classified under this subsection." See Wis. Stat. § 70.32(2)(c)4.
¶ 77. If the taxpayer had made the argument above but not succeeded with it, he could have explored whether the land qualified as "agricultural forest land" under Wis. Stat. § 70.32(2)(a)5m., as defined in § 70.32(2)(c)ld., because "agricultural forest land" includes land capable of producing commercial forest products.[8]
¶ 78. The fact that the taxpayer's land was designated as wetlands did not necessarily mean that it met the definition for undeveloped land, which is "uncultivated land zoned as shoreland under 59.692 and shown as wetland on a final map under s. 23.32." Wis. Stat. § 70.32 (2)(c)4. (emphasis added). The land would have to be "bog, marsh, lowland brush ... or other nonproductive land not otherwise classified under this subsection" to be classified as "Undeveloped land." Id. (emphasis added). The land would have been "otherwise classified" if the land were "capable of producing commercial forest products."
¶ 79. Forest land "capable of producing commercial forest products" will likely be classified as either "agricultural forest land" or "productive forest land." However, if environmental law somehow prevents the trees from ever being harvested so that the land is not actually "capable of producing commercial forest prod *607 ucts," it would seem that the "productive forest land" or "agricultural forest land" classifications would be improper. The latter point poses an unanswered statutory interpretation question.
¶ 80. To sum up, the taxpayer may, in fact, have been entitled to reclassification of his property, but not on the evidence he provided.
¶ 81. For the foregoing reasons, I respectfully concur.

 All reviewing courts concluded that he did not meet his burden to accomplish this objective.

 The record contains an "Objection Form For Real Property Assessment." The form includes the following question: "Have you improved, remodeled, added to, or changed this property since acquiring it?" The taxpayer answered "No." The question is sufficiently general that it does not really explore whether the taxpayer did anything to the trees on the property.

 Wis. Const, art. VIII, § 1 (amended 1941) (emphasis added). In the 1941 amendment, the language changed slightly but remained largely the same:
The rule of taxation shall be uniform but the legislature may empower cities, villages or towns to collect and return taxes on real estate located therein by optional methods. Taxes shall be levied upon such property with such classifications as to forests and minerals including or separate or severed from the land, as the legislature shall prescribe.
Wis. Const, art. VIII, § 1.
In 1974 the people approved another constitutional amendment adding the following sentence to Article VIII, § 1: "Taxa *601 tion of agricultural land and undeveloped land, both as defined by law, need not be uniform with the taxation of each other nor with the taxation of other real property."

 The "Woodland Tax Law," set out in Wis. Stat. § 77.16, was not created until 1953. See § 2, ch. 384, Laws of 1953. The Woodland Tax Law stated that "the owner of any tract of land of less than 40 acres may file with the conservation director an application setting forth a description of the property which he desires to place under the woodland tax law and on which land he will practice forestry." Id. If the conservation director determined that the land was suitable for growing trees of commercial quality, the application would be approved. Id. The woodland would then be taxed at 20 cents per acre, and the owner would be obligated to "promote the growth of trees." Id.

 See also chs. 279 and 356, Laws of 1929; ch. 375, Laws of 1927; ch. 388, Laws of 1923.

 Ch. 427, Laws of 1931.

 § 27, ch. 19, Laws of 1959.

 Although the record is unclear as to the precise nature of the taxpayer's total property, the "Objection Form For Real Property Assessment" indicates that the parcel at issue was purchased with a farm and that the parcel is "land locked." Thus, it is possible that the "farm" was agricultural land, and the taxpayer might have been able to claim that the parcel at issue was "agricultural forest land."

 1f he had paid the taxes assessed, Sausen could have appealed the assessment pursuant to Wis. Stat. § 74.37(3)(d) wherein he would have commenced an independent action in circuit court subsequent to the board of review's decision. See Nankin v. Vill. of Shorewood, 2001 WI 92, ¶ 3, 245 Wis. 2d 86, 630 N.W.2d 141 (explaining that with real property located outside Milwaukee County, a property owner could employ § 74.37(3)(d) to recover taxes paid on an excessive assessment).